## PEOPLE *v.* WILEY.

(*Supreme Court, General Term, Fifth Department.*  October 21, 1892.)

1. CRIMINAL LAW—VENUE—ADVISING COMMISSION OF CRIME.
    Where defendant, while in E. county, counsels another to steal a horse in C. county, which is done accordingly, defendant is guilty of a larceny in C. county; Pen. Code, § 29, declaring one who counsels or induces another to commit a crime a principal in such crime.

2. SAME—PARTICIPATING IN OFFENSE.
    Defendant, while in E. county, advised a boy to steal a horse in C. county.  The boy, in accordance with defendant's advice, led the horse to a highway in C. county, where defendant met him, put a bridle on the horse, and helped the boy to mount. *Held,* that defendant actively participated in the larceny in C. county.

3. SAME—ACCOMPLICE TESTIMONY—CORROBORATION.
    On a trial for larceny of a horse, a boy testified that defendant sent for him one evening, and advised him (witness) to steal the horse, and drew on an envelope a map showing what route he should take to reach the stable.  The witness also stated that he took the horse, and was met by defendant, who put a bridle on it, and helped witness to mount.  The alleged messenger from defendant to the boy stated that she delivered the message to the boy, and that he went away that evening after supper.  There was also evidence that a map like the one described by the boy was found in his bedroom; that certain words on it were in defendant's handwriting; that the boy was seen at defendant's house on the evening testified to by him, and that the tracks of a man and a boy, together with the horse's tracks, were found at the place where the boy said defendant met him and put a bridle on the horse.  *Held,* that the boy's testimony was sufficiently corroborated to justify a conviction.

Appeal from court of sessions, Cattaraugus county.

Columbus Wiley was convicted of grand larceny in the second degree, and appeals.  Affirmed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*C. Z. Lincoln,* for appellant.  *J. H. Waring,* for the People.

DWIGHT, P. J.   The defendant was indicted by the grand jury of Cattaraugus county of the crime of grand larceny, in stealing a horse of one Perkins, in the town of Ashford in that county.   The defendant lived in Springville, in Erie county, near the Cattaraugus creek, which separates the two towns and counties; and the barn of Perkins, from which the horse was taken, was near the creek on the other side.   A boy of 16 years of age, who had lately escaped from the State Industrial School in Rochester, had come, in his flight, to the house of a relative who lived in Springville; and his presence there, and the fact that he was a fugitive from justice, had come to the knowledge of Wiley, the defendant.   The boy testifies that he went on Saturday night to the house of Wiley, who lived entirely alone, to ask for the loan of a horse to ride to his home in Wyoming county, when, as he testifies, Wiley proposed to him to steal Perkins' horse, offered to give him five dollars if he would do it, and threatened that if he would not he would give him up to the authorities at Rochester.   He testifies that Wiley at that time traced on an old envelope the direction of the road which led from that place to Java lake, in Wyoming county, indicating the location of two cross roads,—one at the forks of the Cattaraugus creek, and one at Yorkshire corners,—and also of the village of Arcade, all of which points he must pass on his route, and that Wiley wrote the words "Forks" and "Yorkshire" at the appropriate points on the little map, as those words appeared on the paper which was in evidence on the trial.   He testifies that he took the envelope with him when he returned to his aunt's house that night, after he had promised Wiley that he would come the next night, (Sunday,) and take the horse.   He testifies that he failed to keep that appointment, for a reason stated, and that on Tuesday his cousin, a little daughter of the aunt with whom he was staying, brought him word from Wiley that the latter wanted to see him that night; that he went to Wiley's house Tuesday night, in response to that message, and under Wiley's directions went over the creek to Perkins' barn, took out the horse, led him across a field to a highway on the Cattaraugus side of the creek, where he was met by Wiley, who took the halter from the horse, put on a bridle of his own, helped the boy to mount, and sent him on his way.   This statement plainly meets the objection of the defendant to the jurisdiction of the grand jury of Cattaraugus county to find the indictment, and of the court of sessions of that county to try the indictment.   Even if the participation of the defendant in the crime had been confined to the fact of counseling and inducing its commission, that made him, by express definition of the present statute, a principal in the crime.   Pen. Code, § 29.   So that, although the counseling and inducing to the crime were done in Erie county, yet, the overt act being committed in Cattaraugus county, the defendant, as a principal in the crime, was properly indicted and tried in the latter county.   But the statement shows that the defendant was also personally present, aiding and abetting in the commission of the crime, in Cattaraugus county.   The act of larceny was not ended when the horse was taken from the barn, but continued at every step of his removal therefrom, and in this the defendant was an active participant on the Cattaraugus side of the line.   The testimony so far stated was all from the mouth of an accomplice in the crime.   It was necessary, to the conviction of the defendant, that this testimony should be "corroborated by such other evidence as tends to connect the defendant with the commission of the crime."   Code Crim. Proc. § 399.   The corroborative evidence in this case seems to us ample to meet this requirement of the statute.   It was mainly as follows: One witness testified that he called at Wiley's house on the Saturday night mentioned by the principal witness, and found him and the defendant alone together, and saw a paper lying on the table between them, which he believed to be the one in evidence, on which the route of the boy was traced.   Several witnesses gave evidence tending to show that the words "Forks" and "Yorkshire" on that paper were in the defendant's

·handwriting.　The young girl mentioned by the principal witness testifies that on Tuesday afternoon the defendant met her on her way home from ·school, and told her to tell that little fellow, her cousin, to come up to his ·house that night; that he wanted him; that she delivered the message, and the boy went away that evening after supper.　The aunt of the principal witness testified that after he went away from her house she found the envelope on which the little map was drawn in the room in which he had slept.　And there was evidence that the fresh tracks of two persons, apparently a man .and a boy, with those of a horse, were found the same evening that the horse was taken, at the point where the principal witness testified Wiley met him .and helped him onto the horse's back.　The probative force of the corroborative testimony is not in question.　It is only necessary that it should tend, in any degree, to connect the defendant with the commission of the crime; and it then becomes a question for the jury whether, with such corroboration, the testimony of the accomplice is entitled to credit, and establishes the guilt of the accused.　It seems very clear that neither of the objections to the judgment which have been discussed are tenable, and no others are presented in the argument in support of this appeal.　The judgment should be affirmed.

Judgment and conviction appealed from affirmed, and the case remitted to the court of sessions of Cattaraugus county to proceed thereon.　All concur.