# CHARLESTON.

STATE *v.* ELLISON.

Decided March 9, 1901.

1. ACCESSORY BEFORE THE FACT—*Venue.*

The crime of an accessory before the fact, though inchoate in the act of counseling, advising, aiding, abetting, hiring, and commanding, is not consummated until the deed is actually done. It is the doing of the deed, and not the counseling, advising, aiding, etc., merely, that makes the crime complete; and it is for the deed, the result of the counseling or procuring, and not for the counseling or procuring itself, that the accessory is indicted. There.ore the *locus in quo* of the offense of an accessory before the fact to a felony is in the county in which the felony is done. The crime is only complete when the felony is done, and the jurisdiction for the trial of the criminal may be where the felony is committed, and, under our statute, may also be in the county in which the accessorial act is done. (p. 74).

2. INDICTMENT MUST LAY—*Venue of Accessorial Act.*

But when the indictment fails to lay the venue of the accessorial act of counseling, advising, abetting, hiring, etc., according to the fact, the indictment is bad on demurrer for uncertainty. (p. 75).

3. STATUTE—*Construction—Reasonable Doubt.*

When the constitutionality of a statute is in question, it is a well-established rule of construction that the reasonable doubt must be resolved in favor of the constitutionality of the law. (pp. 75, 76).

Error to Circuit Court, Braxton County.

James Ellison was convicted of abetting the theft of a horse, and brings error.

*Reversed.*

DULIN & HALL, for plaintiff in error.

EDGAR P. RUCKER, ATTORNEY GENERAL and LUTHER C. ANDERSON, for the State.

MCWHORTER, JUDGE:

At the August term, 1899, of the circuit court of Braxton County, the grand jury of said county returned the following indictment:

"The grand jurors of the State of West Virginia, in and for the body of the county of Braxton, and now attending the said court, do upon their oaths present that Peter McCune and Hamp Stalnaker on the —— day of October, 1897, in the said county, did feloniously steal, take and carry away one horse and one sorrel horse and one sorrel mare of the value of eighty dollars of the goods and chattels of M. F. McMorrow. And the grand jurors aforesaid upon their oaths aforesaid do further present that James Ellison and Matt Shifflet before the said felony was committed in form aforesaid, to-wit: on the —— day of ——————, 1897, did unlawfully and feloniously counsel, aid, abet, procure, hire and command the said Peter McCune and Hamp Stalnaker to do and commit the said felony in manner and form aforesaid, against the peace and dignity of the State."

The defendant James Ellison appeared and demurred to said indictment, which demurrer was overruled, plea of not guilty entered, jury trial, verdict of guilty, motion to set aside verdict and grant new trial, which was also overruled, judgment and prisoner sentenced. Defendant saved four several bills of exceptions, and obtained a writ of error, and makes five assignments, but does not insist upon those based upon the admission of improper evidence, as the evidence is not all certified, but relies upon his demurrer to the indictment, and the error assigned for giving improper instructions by the court on behalf of the State, and refusing proper instructions asked by the defendant. Counsel for defendant insists that the indictment should allege that the accessorial act was committed in Braxton County, in order to give the circuit court of Braxton County jurisdiction, and cites *State* v. *Hobbs,* 37 W. Va. 812, where it is held, "That the alleged crime was committed within the jurisdiction of the court must be shown in the indictment and proved as charged." Also 1 Bishop's Crim. Pro. s. 360, "The place of the offence must be alleged and proved, also no jurisdiction of the court over the transaction appears," and raises the constitutional question as to the jurisdiction of the circuit court of Braxton County, that section 8, chapter 152, Code, in so far as it authorizes the indictment and trial of an accessory before the fact, in the county in which the principal felony was committed, although the accessorial act occurred in another county, is repugnant, to Art. III, s. 14, of the Constitution, which provides that "Trials of crimes and misdemeanors, unless herein otherwise provided shall

be by a jury of twelve men, public, without unreasonable delay, and in the county where the alleged offense was committed, unless upon petition of the accused, and for good cause shown, it is removed to some other county." *State* v. *Lowe,* 21 W. Va. 782, is confidently relied on by counsel for defendant to sustain his contention. There it is held that section 12, chapter 152, Code, which authorizes a crime to be prosecuted and punished in a county in which the offense was not committed, when the crime was committed within one hundred yards of the boundary line of the county, is unconstitutional, null and void, as being in conflict with said Art. III, s. 14 of the Constitution. In the case cited JUDGE GREEN refers to the case of *Armstrong* v. *State,* 1 Caldwell 338, (Tenn.), where the court decided, as stated by JUDGE GREEN, "that a provision of their Code, s. 4976, which provided that 'when an offense is committed in the boundaries of two or more counties, or within a quarter of a mile thereof, the jurisdiction is in either county,' was unconstitutional, null and void, it being in conflict with their constitution, which they interpreted to be in this respect the same as ours." JUDGE GREEN proceeds to say: "This case is directly in point, and is entitled to great consideration by us, especially as the court reached this conclusion reluctantly, and only because they regarded the law as being in direct conflict with the constitution." The constitution of Tennessee, Article I, section 9, guarantees to the accused "A speedy public trial by an impartial jury of the county in which the crime shall have been committed." Substantially identical with ours, in so far as it fixes the venue in criminal cases. While this statute provides that an accessory before the fact may be prosecuted and convicted for a felony, whether the principal felon has or has not been previously convicted, the offense being cognizable in any court having jurisdiction of the crime of the principal felon, also substantially the same as our statute on the same subject. Section 8, chapter 152, Code, *State* v. *Ayres,* 8 Baxter (Tenn.) 96, is a case directly in point, and as stated by JUDGE GREEN in the *Lowe Case,* "is entitled to great consideration by us." The question has never been passed upon by this Court. The real inquiry in the case is, where was the crime committed by the accessory? If the horse had never been stolen, had the accessory done anything for which he could have been prosecuted? If not, when and where was his act consummated? In the *Ayres Case* just cited John Webb and David

Duncan were indicted for the murder in Knox county of Richard F. Reynolds, and in the same indictment it was charged that Joseph Ayres and Columbus Ayres, before the said felony and murder was committed as aforesaid, to-wit, the day and year aforesaid in the county of Anderson, State of Tennessee, did unlawfully, maliciously and feloniously move, incite, counsel, hire, command and procure the said John Webb and David Duncan," etc., to commit said felony and murder. This question is very well discussed in the *Ayres Case* just cited. I quote from the opinion: "The sole question presented is whether the prisoner, who in one county of this State counseled, hired, procured or commanded a murder to be committed in another county of this State, is indictable in the county where the murder was actually consummated, or in the county in which such counseling, hiring, commanding or procuring was done as accessory before the fact to such murder."

The indictment was framed under the provisions of the Code, section 4975, in the words following:

"Where an offense is committed partly in one county and partly in another, or the acts or effects thereof, constituting or requisite to the consummation of the offense, occur in two or more counties, the jurisdiction is in either county."

It is insisted in behalf of the prisoner that the statute is repugnant to that provision of the Constitution which guarantees to the accused "a speedy public trial by an impartial jury of the county in which the crime shall have been committed." Constitution, Article I, section 9, and this depends upon the inquiry, where was the crime of accessory before the fact committed in this case? * * *

The crime of accessory before the fact is a peculiar one. The absence of the accessory at the time and place of the principal offense is an essential element of the crime. Thus Sir Mathew Hale defines the accessory before the fact to be "one, who being absent at the time of the crime committed, doth get, procure, counsel or command another to commit a crime." Herein absence is necessary to make him an accessory. The crime of the accessory before the fact is not in merely counseling, hiring or commanding the crime to be committed, for if the crime be not at last committed, there is no such offense,; but the connivance and the result aimed at must occur, and the latter must be the effect of the former in order to complete the crime. Thus says Sir

William Blackstone, in discussing the doctrine of accessories after the fact, "If one wounds another mortally, and after the wound is given but before death, a person assists or receives the delinquent, this does not make him accessory to the homicide; for until death ensues there is no felony." 2 Cooley's Blackstone, 320. And the reason applies with like force to the offense of the accessory before the fact. The offense is compounded of the connivance of the accessory and the actual killing by the principal felon, and the crime of the accessory, though inchoate in the act of counseling, hiring or commanding is not consummate until the deed is actually done. The law in such case holds the accessory before the fact to be guilty of the murder itself, not as principal, it is true, but as accessory before the fact, for it is the doing of the deed and not the counseling, hiring or commanding that makes his crime complete; and it is for the murder that he is indicted, and not for the counseling or procuring. We hold, therefore, that the *locus in quo* of the offense of an accessory before the fact to the crime of murder is the county in which the murder is done, and that the jurisdiction is there.* * * The crime of the accessory before the fact being only complete when the murder is done, the jurisdiction for his trial is where the murder is done. This is 'the county in which the crime was committed, in the sense of the Constitution.' "

Ellison's crime was committed in Braxton County in the larceny of the horse by the parties whom he counseled, aided and abetted in the crime. All the counseling and directing he could have done would not have made him liable to prosecution without the taking of the horse. By the General Assembly of Virginia of 1847-8, what is now section 8, chapter 152, of our Code, was enacted, and has been the law of Virginia and West Virginia ever since. The Virginia Bill of Rights still retains the word "vicinage" in the section under consideration, while ours uses the word "county." This statute has been acquiesced in for more than half a century in both states. It was re-enacted after the adoption of our first constitution, and, as is well said, by the court in the *Ayres Case,* "must be taken as a legislative solution of the problem under consideration. Under it the prisoner would have absolute impunity for the alleged crime, unless arraigned and tried, in the words of the statute, 'in the court having jurisdiction of the crime of the principal felon.' " The crime of the accessory before the fact in case at bar was contrived, concocted,

begun in Calhoun County, but was consummated, completed in Braxton County. The statute places him on the same footing as the principal, in fact, makes him a principal in effect. It is true, under the common law, when he used an intelligent or guilty agent, he could only be prosecuted in the county in which he contrived the crime or did the accessorial at. Can it be said in this case that either the spirit or letter of the constitution has been violated by the Act of 1847-8 or the re-enactment of it since the adoption of our first constitution? Any length of time of acquiescence "would not conclude this Court in regard to a statute which was a plain violation of the Constitution?" *State* v. *Cottrill,* 31 W. Va. 162 (6. S. E. 428). In *Railway Co.* v. *Miller,* 19 W. Va. 408, (syl. pt. 3). it is held, "When the text of the constitutional provision is plain and unambiguous, courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument itself." The difficulty here is not in the ambiguity of the Constitution, but only as to the place of the commission of the crime. In the *Ayres Case* already cited, the only case I find where a constitutional provision like the one under consideration has been construed, it is held unequivocally that the crime of the accessory was consummated in the final transaction when the principal felon completed his work, in which act only the crime of the accessory before the fact was complete, and the jurisdiction for his trial is where the deed was committed, and is "the county in which the crime was committed," in the sense of the Constitution. It is a well established rule of construction that the reasonable doubt must always be resolved in favor of the constitutionality of a law. In *McNeeley's case,* 36 W. Va. at page 95, JUDGE BRANNON in speaking of the law-making power of the State, says, "A court must be slow and cautious to overthrow its action. In none but a case of very plain infraction of the constitution, where there is no escape, will or ought a court to do so. To doubt only is to affirm the validity of its action. I resolve my doubt in this way." But counsel for defendant insist that the indictment is bad because it does not allege in what county the accessorial act was committed, that the whole indictment taken together does not charge the defendant with the commission of such act in Braxton County, and if it did there is a fatal variance between the allegation and the proof. "Where by statute the jurisdiction of a certain offense is in either of two counties, the venue should be laid according to the fact."

10 Am. & E. Pl. & Pr., 526. The defendant is entitled to have notice in the indictment in what county he is charged with having counseled, advised, aided, hired, etc., the principal felon to commit the deed, in order that he may prepare for his defense. In case of *Connor* v. *State,* 29 Fla. 455, under a statute which provides "that in all cases where an indictable offense shall be perpetrated in Florida and the same shall commence in one county and terminate in another, the person offending shall be liable to indictment in either county," an information for obtaining property under false pretenses "which by reason of its uncertainty does not make it appear that the property was obtained in the county where the pretences were made, nor elsewhere in the State, does not show that a court of the county where the pretences are alleged to have been made has jurisdiction of the offense." Section 786 of the penal code of California provides, "When property taken in one county, by burglary, robbery, larceny or embezzlement has been brought into another, the jurisdiction of the offense is in either county." An indictment in San Bernardino county charging one Scott with burglary which had been committed in San Diego county and the property brought into the county of San Bernardino, the indictment failing to allege the facts as they existed, viz: "that the burglary was committed in the county of San Diego, and that the property was taken and carried into the county of San Bernardino," held, that the proffered evidence of the crime was inadmissible. *Searcy* v. *State,* 4 Texas 451.

The third assignment of error is as to the giving of instructions asked by the State and refusing instructions asked by the defendant, as set out in bill of exceptions No. 2. The State's first instruction is to the effect that if the jury believe from the evidence that defendant advised, counseled, hired or procured the principals in the indictment mentioned, personally, or that he advised, counseled, hired or procured said persons and one of them through or by the other to steal horses at the time mentioned in the indictment, and that in pursuance of such advice, etc., said principals did steal the horse as alleged, they should find the defendant guilty, and further that it was not essential that they should believe that the defendant advised, counseled, etc., the principals to steal the horse of M. F. McMorrow before they could find the defendant guilty. The instruction No. 2 offered by defendant and refused, "The court instructs the jury

that unles they believe from the evidence beyond a reasonable doubt that James Ellison counseled, aided, abetted, procured, hired, or commanded Hamp Stalnaker and Pete McCune to steal the horse of M. F. McMorrow as charged in the indictment, they should find him not guilty," which was properly "refused because another instruction to the same purport, and because, without modified, misleading." The other instructions raise the constitutional questions hereinbefore discussed, except one given for the State to the effect that the jury are the sole judges of the evidence in the case; that they could believe or refuse to believe any witness introduced in the case, and that in passing upon the credibility of any such witness they might rightly take into consideration any interest such witness might have in the result of the trial and his demeanor upon the witness stand, which instruction was proper to be given, as correctly propounding the law.

For the reasons herein given the judgment is reversed, the verdict set aside, and the demurrer to the indictment sustained as to the accessory before the fact.

DENT and POFFENBARGER, JUDGES, *Concur.*

*Reversed.*

BRANNON, PRESIDENT, *(dissenting):*

I have no question but that Ellison was constitutionally indicted in Braxton; but I do not agree to the reversal of the judgment for failure of the indictment to state that he counseled in Calhoun County the act.

As shown in JUDGE McWHORTER's opinion, in statute law, the accessory commits his crime in the county where the principal commits his crime. He may begin his criminality in Calhoun but it is going on, continuing until the felony is done, and the accessory's incitement is, in law, just as much active and operative upon the principal where he steals the horse as when he in Calhoun gave that incitement. Hence, when the incitement charges the act of larceny as done in Braxton, it follows that the accessory's inducement was also there. It is, in legal view, charged as given there. Where the indictment "is one against both principal and accessory, as is this one, the whole indictment constitutes only one county." 2 Bish. Cr. Pro. 35; 1 *Id.* s. 467. Therefore, when the indictment says that McCune and Stalnaker

stole the horse in Braxton it legally says Ellison counseled them in that county to do so.

The passage cited by JUDGE McWHORTER from 10 Ency. Pl. & Pr. 526 means that where you may prosecute in either of two counties, you must lay venue—venue, I say— in the county you select, and has no reference to the commission of the act.

The case of *Connor* v. *State,* 29 Fla. 455, did not involve our question. The indictment did not show where the obtaining the money was. Where one steals in one county and carries the goods to another, you need not set out in the indictment that he stole in one and carried to another county, but simply state that he stole in the county of the indictment, because in law his offense is there. See note 2, 10 Ency. Pl. & Pr. 526.

So, where one in Calhoun counsels a larceny in Braxton it need not be stated that the counseling was in Calhoun, but it should be alleged as in Braxton, as it is in this indictment. If charged in Braxton could you not prove the procuring in Calhoun? That is by force of our statute allowing the prosecution in Braxton or Calhoun. The practice is to indict principal and accessory to be indicted where he gave encouragement; but our statute changes this, and can we not say that it allowed the act to be charged, as under the statute it is deemed, an act in the county of actual larceny?

I cannot see my way clear to a reversal on this ground. See *State* v. *Jones,* 38 La. Ann. 792, and *State* v. *Fields,* 50 La. Ann. 1239, (26 S. E. 99).