HOSS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. April 12, 1916.)

No. 4087.

1. Banks and Banking ☞61—Officers—Offenses—"Bill of Exchange" —Cashier's Check.

A cashier's check, drawn by the cashier of a bank, payable to the order of a named person, is a bill of exchange, within Rev. St. § 5209, Comp. St. 1913, § 9772), providing that every president, director, cashier, or agent of any banking association, who, without authority from the directors, draws any order or bill of exchange with intent to injure or defraud the association and every person who with like intent aids or abets, shall be guilty of crime; a "bill of exchange" being a written order or request by one person to another for the payment of a specified sum of money to the order of a third person absolutely and at all events.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 121; Dec. Dig. ☞61.

For other definitions, see Words and Phrases, First and Second Series, Bill of Exchange.]

2. Banks and Banking ☞62—Officers—Offenses—Fraud—Bills of Exchange—Evidence.

Evidence *held* to warrant a finding that a cashier drew cashier's checks with intent to defraud a banking association, contrary to Rev. St. § 5209, and that plaintiff in error aided and abetted him with like intent.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 122–124; Dec. Dig. ☞62.]

3. Criminal Law ☞110—Offenses—Accessories—Jurisdiction of Court— "Principal"—"Felony."

The Penal Code which went into effect January 1, 1910 (Act March 4, 1909, c. 321, 35 Stat. 1152) provides in section 332 (Comp. St. 1913, § 10506) that whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, or procures its commission, is a "principal," while section 335 (section 10509) declares that all offenses which may be punished by death or imprisonment for a term exceeding one year shall be deemed felonies. Rev. St. § 5209, provides that every cashier, officer, or agent of any banking association, who without authority shall draw any order or bill of exchange with intent to injure or de-

fraud the association and every person who shall aid or abet him with like intent, shall be guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten years. *Held* that, after the enactment of the Penal Code, the offense must be deemed a "felony," and therefore, under the rule that where a statute provides that an accessory may be prosecuted and convicted as for a substantive felony, one who aided and abetted in the offense, though he was at the time without the district in which the offense was actually committed, may be convicted in the district where the offense was committed, if such court had jurisdiction over the principal.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 228; Dec. Dig. ☞110.

For other definitions, see Words and Phrases, First and Second Series, Felony; Principal.]

4. CRIMINAL LAW ☞98—OFFENSES—ACCESSORIES.

Where a statute provides that an accessory may be prosecuted and convicted as for a substantive felony the crime is cognizable in any court having jurisdiction over the principal.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 192–195; Dec. Dig. ☞98.]

5. CRIMINAL LAW ☞829(1)—TRIAL—INSTRUCTIONS.

It is improper to single out individual facts, and call the jury's special attention to them, where the whole matter can be satisfactorily given in the general charge; therefore, in a prosecution of a bank cashier for drawing and issuing bills of exchange with the intent to defraud a banking association, and of other defendants for aiding and abetting therein, contrary to Rev. St. § 5209, special instructions relating to kiting of checks, which singled out isolated matters presented by the general charge were properly refused.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2011; Dec. Dig. ☞829(1).]

6. CRIMINAL LAW ☞829(1)—TRIAL—INSTRUCTIONS—REFUSAL.

The refusal of special instructions, though correct in law, which were covered by the general charge, is proper.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2011; Dec. Dig. ☞829(1).]

7. CRIMINAL LAW ☞371(1)—EVIDENCE—SIMILAR TRANSACTIONS.

In such prosecution, evidence of other drafts and transactions between the parties to the scheme, issued and occurring about the same time, is admissible; all the occurrences being related.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 830, 831; Dec. Dig. ☞371(1).]

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

C. M. Hoss and another were convicted of aiding and abetting a bank cashier in issuing a bill of exchange with intent to defraud a bank, and sued out a writ of error, which was dismissed, except as to the named defendant. Affirmed.

Benjamin F. Burwell, of Oklahoma City, Okl. (A. P. Crockett and Charles Edward Johnson, both of Oklahoma City, Okl., on the brief), for plaintiff in error.

Isaac D. Taylor, Asst. U. S. Atty., of Guthrie, Okl. (John A. Fain, U. S. Atty., of Lawton, Okl., on the brief), for the United States.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before ADAMS and CARLAND, Circuit Judges, and TRIEBER, District Judge.

ADAMS, Circuit Judge. This was an indictment against Julius F. Rochau, Raymond H. Hoss, and C. M. Hoss, for violating provisions of section 5209 of the Revised Statutes of the United States. There were five counts in the indictment, each charging Rochau, as cashier of the First National Bank of Fairfax, Okl., with drawing a certain specified bill of exchange, without the authority of the board of directors, and with the intent to defraud the bank, and Raymond H. Hoss and C. M. Hoss with aiding and abetting him, with like intent, in so doing.

Rochau fled, and has never been arrested or tried. Raymond H. Hoss and C. M. Hoss were duly apprehended, arraigned, entered pleas of not guilty, tried, convicted on each and all of the counts of the indictment, and sentenced—Raymond for a period of seven years, and C. M. Hoss for a period of five years in the United States penitentiary at Leavenworth, Kan. Both sued out a writ of error from this court, and the cause was docketed here. The writ of error as to Raymond H. Hoss was dismissed by him, and he then entered upon his term of imprisonment; but C. M. Hoss prosecutes the writ of error. He makes the following assignments of errors:

(1) The court erred in refusing to instruct the jury to find a verdict in his favor.

(2) The court erred in refusing to give two certain requested instructions to the jury.

(3) The court erred in admitting certain documents and papers in evidence over his objection.

There are some facts which are uncontradicted and certain, and these we state at the outset. The First National Bank of Fairfax, Okl., was organized as a national banking association in 1905, with a capital stock of $25,000. Later, in 1909, this was increased to $50,-000. Julius F. Rochau was originally made assistant cashier and director. Raymond H. Hoss was made cashier and director. Later, in 1908, Raymond H. Hoss resigned as cashier, and was then made vice president, and Rochau was then made cashier. Later Raymond H. Hoss resigned as vice president and director; Rochau still retaining his position as cashier. Raymond Hoss, although no officer, was afterwards a frequent visitor at the bank, and had free access to the books of the bank, frequently inspecting his own account and the account of the firm of Wismeyer, Moody & Hoss, of which he was a member. Rochau and Raymond Hoss resided in Fairfax, Osage county, Okl., which is in the Western judicial district of that state. C. M. Hoss was an uncle of Raymond Hoss, and resided in Tulsa county, near to the city of Tulsa, which is in the Eastern District of Oklahoma.

The bills of exchange counted on in the indictment were cashier's checks, in the usual form, drawn by Rochau, as cashier, and payable to the order of C. M. Hoss, and by him indorsed. The first count

of the indictment charged the drawing of a bill of exchange on June 7, 1910, for the sum of $7,500, in the following words and figures:

"June 7, 1910.

"First National Bank of Fairfax:

"Pay to the order of C. M. Hoss $7,500.00, seven thousand five hundred and no/100 dollars

"Cashier's Check. [Signed] J. F. Rochau, Cashier."

The second count was based on a cashier's check, like that in the first count, except that it was dated June 17, 1910, and was for $12,-000. The third count was based on a cashier's check, like the others, except that it was dated June 20, 1910, and was for $7,800. The fourth count was based on a cashier's check, like the others, except that it was dated June 11, 1910, and was for $14,500. The fifth count was based on a cashier's check, like the others, except that it was dated June 20, 1910, and was for $7,725.

At the time these checks were drawn, in June, 1910, Raymond Hoss was hard pressed for money and in much financial distress, and on June 8, 1910, he commenced drawing personal drafts upon his uncle, C. M. Hoss, to be collected through the Union Trust Company, at Tulsa, Okl., at which company C. M. Hoss carried a personal banking account. The first draft was for $7,186.25. At that time he (C. M. Hoss) had a balance to his credit in the Union Trust Company of only $28.58. On June 10, 1910, this draft was paid by the Trust Company and the amount thereof charged to the account of C. M. Hoss. On the same day, June 10, 1910, the account of C. M. Hoss in the Trust Company was credited with $7,500, the amount of the cashier's check involved in the first count of the indictment. On June 11, 1910, R. H. Hoss drew a personal draft on C. M. Hoss for $13,900. On June 16, 1910, this draft was paid by the Trust Company and charged to the personal account of C. M. Hoss. On June 14, 1910, his account was credited with $14,500, the amount of the cashier's check described in the fourth count of the indictment. On June 18, 1910, R. H. Hoss drew a personal draft on C. M. Hoss for $12,000, and on June 23, 1910, this was paid by the Trust Company and charged to the account of C. M. Hoss. On June 22, 1910, his (C. M. Hoss) account was credited with the sum of $12,000, the amount of the cashier's check of date June 17, 1910, described in the second count of the indictment. Prior to June 27, 1910, R. H. Hoss drew a personal draft on C. M. Hoss for $15,000. On June 27, 1910, this amount was paid by the Trust Company and charged to the personal account of C. M. Hoss. On June 24, 1910, the account of C. M. Hoss was credited with two items, one $7,800, and the other $7,725; these sums corresponding to the amounts of the two cashier's checks involved in the third and fifth counts of the indictment.

From the foregoing it appears that there was a striking coincidence between the amounts of the several cashier's checks counted on in the indictment and the personal drafts of Raymond Hoss upon his uncle, C. M. Hoss, and also a substantial coincidence between the dates the cashier's checks were credited to C. M. Hoss in his account with the Union Trust Company and the dates the personal drafts on C.

M. Hoss were presented for payment at the same Trust Company. It further appears that C. M. Hoss personally indorsed four of the cashier's checks at or before the time they were credited to his account in the Trust Company, and that the other one was indorsed by the cashier of the Trust Company for deposit to the credit of C. M. Hoss. It further appears that the cashier's checks were drawn by Rochau, the cashier, surreptitiously, and were not entered of record in the books of the bank in their proper place where cashier's checks were kept. The checks were drawn by Rochau, the cashier, without the authority of the board of directors of the bank, or without any other lawful authority. They were finally paid by Raymond H. Hoss when they were presented by the Union Trust Company for payment at the First National Bank.

So much for what is practically uncontradicted testimony. In addition to this there was evidence of other transactions involving the use of personal drafts and cashier's checks at about the same time by the same parties, and much extraneous evidence tending to show directly and inferentially the intent with which the cashier's checks were drawn; the government claiming that it all tended to show an intent to defraud the bank upon which they were drawn, and the defendant claiming that it failed to disclose that intent, but did disclose an intent to tide the bank over an embarrassing condition, and more particularly to maintain its legal reserve, which was claimed to have been in danger of impairment.

On this testimony the case was submitted to the jury in a charge fairly presenting the issues involved and the law applicable to them, and particularly the issue of intent. The court, in repeated ways, advised the jury that they could not convict the defendants Raymond and C. M. Hoss, or either of them, as aiders or abettors, unless they should find that Rochau, the cashier, drew the cashier's checks with intent thereby to defraud the bank, and also find that the defendants' Raymond and C. M. Hoss aided and abetted him in so doing, with the same intent. That issue was very clearly impressed upon the jury as the one important and controlling issue of fact in the case. The result was the jury found a verdict of guilty on each and every count of the indictment, and judgment was rendered thereon, as hereinbefore stated.

[1] The first assignment of error challenges the action of the trial court in refusing the request of the defendant C. M. Hoss for an instructed verdict of not guilty in his favor. Counsel now assign three reasons why that instruction should have been given: First, because the cashier's checks counted on in the several counts of the indictment were not bills of exchange within the meaning of section 5209 of the Revised Statutes (Comp. St. 1913, § 9772); second, because there was no substantial evidence tending to show that either Rochau, the cashier, or Raymond or C. M. Hoss, had the intent to defraud the bank in what they did; and, third, because there was no proof that C. M. Hoss committed the offense charged against him in the Western district of Oklahoma, as charged in the indictment.

Were the cashier's checks bills of exchange within the meaning of section 5209? That section reads as follows:

"Every president, director, cashier, * * * or agent of any association, * * * who, without authority from the directors, * * * draws any order or bill of exchange, * * * with intent, in either case, to injure or defraud the association, * * * and every person who with like intent aids or abets any officer, clerk, or agent in any violation of this section, shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten."

A bill of exchange, according to generally accepted definitions, is a written order or request by one person to another for the payment of a specified sum of money to the order of a third person absolutely and at all events. The cashier's checks involved in this case, already copied, manifestly respond to every element of this definition. An order is drawn by the cashier of a bank, who, according to the general usage, custom, and course of banking business, is authorized to act in such matters as the agent of the bank, requiring it to pay absolutely and at all events a specified sum of money to the order of a third person. The Supreme Court of the United States, in Rogers v. Durant, 140 U. S. 298, 11 Sup. Ct. 754, 35 L. Ed. 481, in considering whether an order or a check was barred by the statutes of limitations of the state of Illinois, which reads as follows:

"All actions founded upon accounts, bills of exchange, orders or upon promises not in writing, express or implied, * * * shall be commenced within five years next after the cause of action accrued, and not thereafter"

—held that a check was contemplated in the words "bills of exchange," and therefore must be sued on, if at all, within the period of five years after the cause of action accrued, as contemplated by section 2 of the act, rather than within the period of ten years, which limited the bringing of actions upon promissory notes, simple contracts, or "other indebtedness in writing," as contemplated by section 1 of that act.

In the case of First National Bank v. Whitman, 94 U. S. 343, 345, 24 L. Ed. 229, the Supreme Court says:

"It is not to be doubted, however, that it is within the power of the bank to render itself liable to the holder and payee of the check. This it may do by a formal acceptance written upon the check, in which case it stands to the holder in the position of a drawer and acceptor of a bill of exchange"— citing Merchants' Bank v. State Bank, 10 Wall. 604, 19 L. Ed. 1008, and Espy v. Bank of Cincinnati, 18 Wall. 604, 21 L. Ed. 947.

The reasoning of these cases would, in our opinion, fairly cover a cashier's check, whereby the bank, through its agent, becomes the drawer, and the bank itself, by the action of its duly authorized agent in issuing the check, has become the acceptor. Drinkall v. Movius State Bank, 11 N. D. 10, 88 N. W. 724, 57 L. R. A. 341, 95 Am. St. Rep. 693.

The industry of counsel for plaintiff in error has drawn our attention to some cases sustaining a different view. Most, if not all, of those cases are concerned with private checks drawn by depositors on banks in which they keep a personal account. In such cases the check is not payable absolutely and at all events. The drawer may, at any time before the check has been actually presented to the bank for payment, countermand it, and in other particulars personal checks

differ from cashier's checks; accordingly principles which govern such a check are not necessarily applicable to a cashier's check. In our opinion the cashier's checks involved in this case are fairly comprehended within the words "bills of exchange," as employed in section 5209, Revised Statutes.

[2] Was there substantial evidence tending to show that Rochau drew the cashier's checks with intent to defraud the bank, and that C. M. Hoss aided and abetted him in so doing with like intent? We have already referred to important uncontradicted testimony in the case, and stated in a general way what the testimony on both sides tended to prove. In our opinion the evidence so referred to in itself, and especially when taken in connection with all the facts and circumstances of the case, tends strongly to show that Rochau, Raymond Hoss, and C. M. Hoss deliberately devised a scheme to make use, temporarily at least, of the funds of the First National Bank for their private purposes.

The drawing of personal drafts by Raymond Hoss upon his uncle for amounts far beyond any reasonable expectation of their being honored, and contemporaneously therewith having Rochau, the cashier of the bank, supply the funds with which they could be honored by drawing the cashier's checks in question, payable to the order of C. M. Hoss, and arranging for their collection by and through the Union Trust Company, turned out to be an effective device for obtaining money by Raymond Hoss, and incidentally, as the proof tends to show, for leaving a little surplus arising from the negotiation of the cashier's checks from time to time with the defendant C. M. Hoss. The device was obviously not intended for great permanency, as the sequel showed; but it served the purpose of raising money for the immediate exigency at least. But the use of the bank's money while the "kiting" purposes were being conducted, even if in the end the bank lost no money (as claimed by counsel for appellee), amounted to an unlawful conversion to their own use of money of the bank, and would establish, if permitted to be resorted to, a very dangerous practice which might in time ruin any bank.

The proof, in our opinion, justified the jury in finding the issue clearly submitted to them by the court, namely, whether the cashier's checks were drawn by Rochau with the intent to defraud the bank, and whether the defendant Hoss aided and abetted him in so doing, with like intent, against the defendant. At least it is an unwarrantable tax upon our credulity to hold that there was no substantial evidence to warrant a jury in finding the issue of intent against the defendant.

[3, 4] Was the venue wrong? Rochau, the cashier, lived in Fairfax, within the Western district of Oklahoma, and there drew the cashier's checks in question, to provide a fund with which to take up the personal drafts drawn by Raymond Hoss upon his uncle, C. M. Hoss, who resided in or near the city of Tulsa, in the Eastern district of Oklahoma. It is contended by counsel for Hoss that the evidence discloses no act done by him at Fairfax, or at any place in the Western district of Oklahoma, in aid of Rochau, and that as a result Hoss could not have been lawfully tried in the Western district as an

aider or abettor.  It is doubtful if the assumed premises are correct, for it is hardly conceivable that the elaborate device resorted to for the accomplishment of their purpose, involving, as it did, the active co-operation of C. M. Hoss, could have been concocted without, the co-operation in its inception of the person who was to play the important part which C. M. Hoss played, and the reasonable inferences from the facts proven may have warranted the jury in finding that he did co-operate with them at Fairfax where this scheme had its origin.  Without admitting the fact so to be, that C. M. Hoss did not actually perform any act in the Western district as an aider or abettor of Rochau in his unlawful act, how does the case stand?  Rochau, the principal, without doubt, did an unlawful act in the Western district, and according to the verdict of the jury C. M. Hoss aided and abetted him, at least in Tulsa in the Eastern district, in so doing.

While section 5209 denominates the offenses therein denounced as misdemeanors, subsequent statutes have made a different provision concerning the character of the offenses.  Section 335 of the federal Penal Code, which went into effect on January 1, 1910, provides as follows:

"All offenses which may be punished by death, or imprisonment for a term exceeding one year, shall be deemed felonies.  All other offenses shall be deemed misdemeanors."

Accordingly the punishment imposed for violating section 5209, being for at least five years in the penitentiary, constitutes those offenses felonies.  The indictment in this case was found by the grand jury on September 9, 1911, and the offenses charged in the indictment were committed some time in June, 1910.  It results, therefore, that the rights of the parties were fixed by the law as it stood after the passage of the federal Penal Code on January 1, 1910.  Section 332 of the Penal Code provides as follows:

"Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

C. M. Hoss, therefore, although an aider and abettor in the crime charged against Rochau, was a principal in the same crime, and was liable himself as for a substantive offense, and is punishable in the same manner as the principal actor is for a felony.  It is well settled, we think, that where a statute provides that an accessory may be prosecuted and convicted as for a substantive felony the crime is cognizable in any court having jurisdiction of the principal.  Scully v. State, 39 Ala. 240;  People v. Wiley, 20 N. Y. Supp. 445;[1]  State v. Ayers, 67 Tenn. (8 Baxt.) 96;  Carlisle v. State, 31 Tex. Cr. R. 537, 21 S. W. 358;  State v. Ellison, 49 W. Va. 70, 38 S. E. 574.  See also Keliher v. United States, 114 C. C. A. 128, 193 Fed. 8.

[5, 6]  It is next contended that the court erred in refusing to give two certain instructions to the jury, as requested by defendant's counsel.  These were to the general effect that the drawing and circulating of "kite" drafts or checks did not constitute a violation of any federal

---

[1] Reported in full in the New York Supplement;  reported as a memorandum decision without opinion in 65 Hun, 624.

law, and that if the jury should believe that such drafts or checks were issued and put in circulation for the use and benefit of the defendants, or either of them, yet if the jury should believe that R. H. Hoss had reasonable ground to believe that he would be able to pay or take care of the same when they should be presented for payment at the Fairfax Bank, then and in that event such act would constitute no crime, and, further, that if such drafts or checks were paid or caused to be paid by Raymond Hoss when they were finally presented for payment that the jury might take that fact into consideration in determining the intent with which the drafts or checks were issued.

It is quite improper to single out individual facts of a case and call the jury's special attention to them, provided the whole matter can be satisfactorily given to the jury in the general charge. Perovich v. United States, 205 U. S. 86, 92, 27 Sup. Ct. 456, 51 L. Ed. 722. These instructions not only were faulty in the respect that they called special attention to certain facts of the case, without giving effect to other correlated and modifying facts, but they were misleading, telling the jury that it was no violation of the law to issue "kite" drafts or checks. In itself, probably, that is correct; but to give such an instruction to the jury might mislead them, causing them to believe that one of the main facts of the case constituting the offense charged against the defendants might practically be ignored by the jury. Moreover, the substance of both of them, so far as they contained correct propositions of law, was given to the jury fully and fairly in the main charge; hence there was no occasion for repeating them. There was no error in refusing to give either of these instructions.

[7] It is next assigned for error that the court erred in admitting certain exhibits in evidence in the nature of other drafts drawn during the month of June, 1910, by Harry Rochau, the assistant cashier, payable to the order of the National Reserve Bank of Kansas City, and admitting a sight draft purporting to be signed by R. H. Hoss, and naming C. M. Hoss as payee, for $14,250, on the ground that they were in no way connected with any of the items or transactions involved in either of the counts of the indictment. Other exhibits tending to show the conduct of business on the part of C. M. Hoss, made also during the month of June, 1910, were admitted in evidence, to which defendant C. M. Hoss took exceptions.

The court is of opinion that those items of evidence were all so related to the transactions involved in the indictment in this case as to be admissible under the general rule, which permits transactions of like general nature occurring at about the same time that the transactions involved in the case on trial occurred, with a view of disclosing the intent with which the transactions under inquiry were had. We think no error occurred in the introduction of any of this testimony.

Some other incidental points were argued by counsel, but, finding in them no prejudicial error, the judgment of the District Court is affirmed.