# CHARLESTON.

STATE *v.* ELMER PADGETT.

Submitted April 24, 1923.  Decided May 1, 1923.

1.  CRIMINAL LAW—*Motion for Continuance Addressed to Sound Discretion of Trial Court, and Judgment not Reversed Unless Refusal Plainly Erroneous.*

    A motion for continuance is always addressed to the sound discretion of the trial court, and the appellate court will not reverse the judgment unless the refusal to grant the motion is plainly erroneous. (p. 627).

2.  SAME—*Discretion of Court in Refusing Continuance for Absence of Witness Held not Abused.*

    Where it appears that the witness on whose absence the motion for continuance is based is the mother of defend-

ant, and that she is of advanced age and suffering from a fracture of one of the bones of her wrist received on the day before the trial; that before receiving that injury she had been using a crutch and cane by reason of an injury to one of her legs; that she lives six and a half miles from the court house, and her physician says that her attendance at court would "inconvenience" her; that defendant desires her evidence to prove an alibi at the time of the commission of the offense, and cumulative in its nature; the discretion of the court in refusing continuance has not been abused. (p. 627).

3. INTOXICATING LIQUORS—*Error to Refuse to Allow Defendant, Prosecuted for Owning Moonshine Still, to Show Good Reputation.*

In the trial of an indictment for owning, operating, etc., a moonshine still, it is error to refuse to allow defendant to show his general good reputation in the community where he lives as a law abiding citizen. (p. 628).

4. SAME—*Instruction Defining Moonshine Still in Language of Statute Held not Objectionable as Abstract.*

An instruction which defines a "moonshine still" in the language of the statute, in the trial of an indictment for owning, operating, maintaining, possessing and having an interest in an apparatus, mechanism or device for the manufacture of intoxicating liquors, is not objectionable as being abstract. (p. 629).

5. CRIMINAL LAW—*Where Instructions Cover Entire Case, Other Instructions, not Furnishing Additional Aid to Jury, Properly Refused.*

Instructions should not be repeated, although expressed in different language. And where instructions are given covering the entire case, other instructions tendered which would not furnish additional aid to the jury in arriving at a verdict should be refused. (p. 629).

6. SAME—*Verdict on Conflicting Evidence not Disturbed, Unless Clearly Against Preponderance of Evidence.*

A verdict based on conflicting evidence, and upon inferences proper to be drawn from all the facts and circumstances will not be disturbed by this court, unless there is such a preponderance against the verdict as will warrant the conclusion that it was rendered as the result of passion, prejudice or some ulterior motive on the part of the jury. (p. 631).

Error to Circuit Court, Wood County.

93 W. Va.

Elmer Padgett was convicted of owning, operating, maintaining, possessing, and having an interest in a moonshine still, and he brings error.

*Reversed and remanded.*

*R. E. Bills, and Hogg & Hogg,* for plaintiff in error.

*E. T. England,* Attorney General, *R. Dennis Steed,* Assistant Attorney General, and *W. G. Brown,* State Prohibition Commissioner, for the State.

LIVELY, JUDGE:

Defendant, Elmer Padgett, prosecutes this writ of error from a judgment of the circuit court pronounced on the 27th day of May, 1922, sentencing him to confinement in the penitentiary for three and a half years and to pay a fine of $500 and costs, on a verdict finding him guilty of owning operating, maintaining, possessing and having an interest in a "moonshine still."

In February, 1922, J. Walter Bee, then a state prohibition officer, accompanied by W. A. Smith, captain of police of Parkersburg, William L. Hays and Hobart G. Smith, members of the state police, went, with a search warrant, to the home of defendant, who lived with his mother on a farm one mile from Lubeck in Wood county. They arrived there near midnight, and found in a little shanty near the barnyard and about 200 yards from the dwelling a moonshine still in operation and about four gallons of moonshine liquor in jugs, and some in a crock; they also found in the kitchen of the dwelling house a boiler on a stove with some hot mash or "singlings" in it. In the dwelling house was an old lady, defendant's mother, in bed, to whom one or two of the officers talked. The officers decided to watch the still awhile, and in just a few minutes a hound dog came along and about the same time a man passed close to Bee, who called to him to halt and throw up his hands, but the man turned and ran, whereupon Bee shot "a couple of times," but not intending to hit the man. Neither Bee nor W. A. Smith, who saw the man in the dark, knew him, but both say he was a good sized, rather

tall man, and Bee says he thinks there is no .doubt it was Elmer Padgett. On the Sunday following, officers Bee, W. A. Smith and Hays, went back to the Padgett home, and found some mash which had been emptied out near the barn, covered with some fodder, which they were able to locate by its smell. Defendant says this was some corn that looked like it had been chewed up by the mice and rats; that there was not over a half gallon of it, and that he often found that kind of corn around his crib. Defendant testified that he left home the night the still was found, about 7 o'clock, with two hound dogs, to go hunting; that he saw a man and heard others with him talking, immediately after he left home; that he did not recognize him as it was after dark, but that he was rather tall; that the man came up pretty close to him and wanted to know about "running off a little bit;" that he asked the man what he meant, and he said he wanted to run off a little liquor; defendant then told him that he could not do it as his mother was old and crippled and there was no one else at home, and that he, defendant, was going hunting. He went around by Bailey's, about three-fourths of a mile from defendant's home, passing there about nine or nine-thirty o'clock, and inquired for one of his hounds which had left him; he arrived at Calvert's, which is about a mile and a half from his home, about ten or ten-thirty o'clock, where he called Tom Calvert out of bed. Calvert made a fire, and the two sat there some time and talked, then both went out on Beckett's ridge hunting, coming back about twelve or half past twelve; at about half past one or two o'clock defendant left for his home. In this, defendant is corroborated by Ira Bailey, Thomas Calvert, and Mrs. Calvert, Tom Calvert's mother, who was at home in bed during the time the boys were sitting by the fire, and after they came back from hunting. None of these witnesses are positive as to the exact time, but think that the hours stated are substantially correct. Defendant says he arrived home late at night, or rather early next morning, and did not know that the officers had been there until his mother told him. He then called up the prosecuting attorney, took some farm

produce and went to Parkersburg; he did not go immediately to the prosecuting attorney's office, but went to see his attorney, Bills, then sold the balance of his butter, eggs, etc. and later in the day went to see the prosecuting attorney. He denies knowledge of the still being on the premises, but thinks some one "slipped" it in on him; he says he had no boiler such as the officers claim to have found on the kitchen stove; that he used the shed or shanty where the still was found, to keep his cows in, and that there was one cow in there that night, but when he got back next morning the cow was turned out, and the barn doors, which he left closed, were open. The officers say there had been no cow in the shed recently.

Defendant alleges that the court erred: (1) in refusing him a continuance; (2) in refusing to permit him to prove his general reputation of being a law abiding citizen; (3) in refusing certain instructions, and modifying others asked by him, and in giving instructions Nos. 1, 2 and 4 for the state; (4) in holding that the evidence was sufficient to authorize a verdict of guilty; and (5) in refusing to set aside the verdict and grant a new trial.

As to the continuance of the trial on the ground of the absence of defendant's mother as a witness, he fails to show that her testimony would have been anything more than cumulative of the testimony of Bailey and the two Calverts; he proved by three witnesses substantially the same facts which he said he wanted to prove by her, namely, that he was not at home that night. The record is silent as to whether she had been summoned. She had fallen the evening before the trial and fractured one of the bones in her wrist and was suffering pain, and before that time she had received an injury to her leg and had been using a crutch and cane, at the time of the second injury. The physicians who attended her said it would "inconvenience" her to attend the trial. She lived about six and a half miles from the court house, and was between sixty-six and sixty-seven years of age. He did not satisfactorily show that he could not safely go to trial without her. Evidently the court concluded that the purpose for which defendant wanted his mother as a witness

could be shown by others, and that her injury was not so grave as to prevent attendance. Can we say otherwise? "A motion for a continuance is addressed to the sound discretion of the court under all the circumstances of the case; and although an appellate court will supervise the action of the court below on such motion, it will not reverse a judgment on that ground, unless such action is plainly erroneous." "To entitle a party to a continuance on the ground of the absence of a witness it must be shown, that the party has used due diligence to procure the attendance of the witness; that he is a material witness; that the same fact cannot be proved by any other witness in attendance; and that the party making the application cannot safely go to trial in the absence of such witness." *Wilson* v. *City of Wheeling,* 19 W. Va. 323, pts. 1 and 2 syl; *State* v. *Bridgeman,* 88 W. Va. 231.

· Defendant was allowed, without objection, to prove by two witnesses, Ira Bailey and Tom Calvert, that his general reputation in the neighborhood in which he resided, and among his acquaintances, neighbors and the people with whom he associated, as to being a law abiding citizen, was good. Practically the same question was asked of six other witnesses; but upon objection by the state the court refused to allow them to testify on this point, to which defendant at the time objected, and assigns this action of the court as error. The general rule now well established is that evidence of good character in respect to the trait involved in the criminal act is always admissible. *Whar. Crim. Ev.* sec 57 et seq; 3 *Greenleaf Ev.* sec. 25. The language of Judge Cooley in *People* v. *Garbut,* 17 Mich. 9, as follows is pertinent: "Good character is an important fact with every man; and never more so than when he is put on trial charged with an offense which is rendered improbable in the last degree by a uniform course of life wholly inconsistent with any such crime. There are cases when it becomes a man's sole dependence, and yet it may prove sufficient to outweigh evidence of the most positive character." We said in *State* v. *Moyer,* 58 W. Va. 146, that evidence of previous good character is always admissible, " but it should be confined to the trait of character at issue." So says Greenleaf on Evidence in Vol. 3 sec. 25. It ·

should bear some analogy and reference to the charge. It would be hard to say what particular trait of character would be brought in question in a charge of making moonshine liquor, unless it would be the general trait of obedience to law. Violations of the prohibition law are purely statutory offenses, like those relating to embezzlement. A law abiding trait of character would tend to negative indulgence in the propensity for making moonshine liquor; and that was the pertinent and relevant nature of the inquiry attempted to be made. It is true that the inquiry might have been made more specific by showing that he was a law abiding citizen in respect to observance of the prohibition laws. But would not the jury make that application? Then, would he not be entitled to show that he was a law abiding citizen, and have the benefit of his good character as such to be considered by the jury to repel the circumstances tending to convict him of the crime? It would strengthen the legal presumption of innocense. 8 R. C. L. p. 208, sec. 202. *Daniels* v. *State,* 54 L. R. A. 286. We think the court should have permitted defendant to show to the jury that his reputation as a law abiding citizen was good. The evidence was largely circumstantial. *Hey* v. *Com.,* 32 Grat. 946. Did he have the reputation of being a violator of the prohibition laws? If so, the state would have been permitted to show that reputation. He had opened the door for such evidence. The character evidence may not have changed the result, and likely would not have done so; but we cannot speculate on the probable result. It was error to refuse evidence pertinent to the issue, and error is presumed to be prejudicial, unless it clearly appears to be harmless.

Instruction No. 1 for the state simply defined the meaning of a "moonshine still" and follows the language of sec. 37, chap. 32A Barnes' Code 1923, which is the legislative definition. Defendant was indicted for owning, operating, &c an apparatus, mechanism or device for the manufacture of intoxicating liquors commonly known as a "moonshine still." We perceive no error in the instruction.

Instruction No. 2 told the jury that if they believed from

the evidence beyond a reasonable doubt that defendant
either owned, operated, maintained or possessed or had an
interest in a moonshine still in the county as charged in the
indictment then they should find him guilty as charged. The
objection to this instruction is that there was no evidence on
which to base it; no evidence that defendant either owned,
operated, maintained or possessed or had an interest in the
moonshine still found in operation in his shed or outhouse.
We think the evidence, as shown from the statement of facts,
is ample to warrant the jury in finding that he was guilty
of either or all of the offenses charged. Supplemental of
the evidence stated is the fact uncontradicted that defend-
was in full charge of his mother's farm and premises and
operated and controlled it. *State* v. *Kees*, 92 W. Va. 114-S.
E. 617. We think the evidence not only justified the giving
of this instruction but was sufficient to sustain the verdict.
Hence the assignment of error on the insufficiency of the
evidence is not well taken. There is some conflict in the evi-
dence as to the presence of defendant near the still when the
officers found it. Witness Bee says that he has no doubt that
the man whom he halted and who fled was defendant; but the
night was dark, and he could have been mistaken in his
opinion; but the other facts and circumstances are such that
the jury could well draw conclusions of guilt, and the court
should not set aside the verdict in such cases unless there is
such a decided preponderance of evidence against it as to
indicate passion, prejudice or improper motive on the part of
the jury. Was it necessary to catch defendant in active
charge of the still in order to convict? The story of meeting
a strange man in the dark who wanted to "run off" a little
liquor that night just after defendant left his home to go
fox hunting was highly suspicious considered in connection
with the use of the kitchen stove and outhouse, and the quan-
tity of liquor found. Instruction No. 4, given for the state,
is as follows: "The court instructs the jury that this case
must be decided upon the testimony which has been detailed
upon the witness stand. Statements made by counsel in ar-
guments to the court upon the evidence *or arguments to the
court upon the evidence* or arguments to you, as to what the

evidence is, are not to be considered as evidence by you unless it corresponds with your memory of the evidence as you heard the witness detail it.'' We cannot approve of this instruction. It is based upon the assumption that counsel may in the argument following make a misstatement of the evidence to which the jury should give no heed unless it corresponded with their memory of what the witness said. Should counsel misstate the evidence as detailed by the witnesses, the court and opposing counsel would be prompt to correct the error when made, and the notes of the official reporter are, by sec. 2, chap. 114, Barnes' Code, 1923, declared to be official and the best authority in any matter in dispute. The instruction given before argument is based upon something which may never occur, and which if it occurred could be fully met and corrected. It is more of a precautionary measure against counsel, than enlightenment of the issue before the jury, and would tend to hamper counsel in the free presentation of his client's case in argument.

Defendant's instruction No. 1 told the jury that defendant was presumed to be innocent, and unless they believed from the evidence beyond all reasonable doubt, that the state had proven each and every material allegation contained in the indictment, then its verdict should be not guilty. The substance of this instruction was given in defendant's instruction No. 4, which told the jury before they could find defendant guilty as charged, they must believe from the evidence beyond a reasonable doubt that defendant did own, operate, maintain or have in his possession or some interest in an apparatus for the manufacture of intoxicating liquor, and unless they did so believe beyond a reasonable doubt that he did own, operate or maintain or have in his possession or have an interest in an apparatus for manufacturing intoxicating liquor as charged in the indictment, then their verdict should be "not guilty." Instructions should not be repeated. This fourth instruction is criticised because the court struck out the word "knowingly" from it as prepared and offered. Just where the word "knowingly" appeared in the original draft does not appear; but we presume it preceded the words

"did own, operate, maintain," &c. We fail to see what virtue the word "knowingly" would add. A person would not likely own, operate or have in his possession, or be interested in such a mechanism without knowing it. The statute does not require that a person shall knowingly operate, maintain, &c a moonshine still in order to be guilty.

The last assignment, refusal of the court to set aside the verdict and grant a new trial, brings up for consideration all of the other assignments. We think there was no error in refusing a continuance; that there was error in not permitting defendant to prove his character as a law abiding citizen; that there was no reversible error in giving or refusing instructions with the possible exception of state's instruction No. 4, in respect to what counsel might possibly say in argument in reviewing the evidence (which we do not approve); and that there was no error in refusing to set aside the verdict on the ground of insufficiency of the evidence to sustain it.

The judgment will be reversed, verdict set aside and a new trial awarded.

*Reversed and remanded.*