# CHARLESTON.

## State v. Joe Magdich

(No. 6113)

Submitted May 8, 1928.    Decided May 15, 1928.

1. Criminal Law—*Where Testimony on Fact Issue in Criminal Case Conflicts, Weight of Reasonable Inferences Deducible is for Jury; Verdict in Criminal Case, Based on Conflicting Evidence, Will Not be Set Aside Unless Plainly Wrong.*

Where the testimony on an issue of fact in a criminal case is conflicting, it is for the jury to determine the weight to be attached to the reasonable inferences that can be drawn from all the facts and circumstances in evidence, and their verdict will not be set aside by the appellate court unless plainly wrong.

(Criminal Law, 16 C. J. § 2292; 17 C. J. § 3594.)

(Note: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Marshall County.

Joe Magdich was convicted of driving an automobile on a public street when intoxicated and under the influence of liquor, drugs, and narcotics, and he brings error.

*Affirmed.*

*Everett E. Moore,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

Miller, Judge:

The defendant, Joe Magdich, was convicted of the statutory offense of driving an automobile upon a public street in the City of Moundsville ''when intoxicated and under the influence of liquor, drugs and narcotics.''

Error is assigned in the refusal of the trial court to set aside the verdict, because contrary to the law and the evidence. Homer Mack, residing at 809 First Street, testified that defendant's companion, whom he afterwards learned was Mike Maholick, came to his door and ''knocked at the door and was

going to come in the house when I pushed him back and shut the door and he muttered around;'' that the man went back to the car, which was driven away; that in about ten minutes they came back, honked their horn and continued talking in a boisterous manner; that because of the annoyance they were causing he called the police, who came and arrested the men. One of the policemen testified that both men were intoxicated when he arrived, and that he arrested them; that the defendant was too drunk to walk, and had to be assisted to keep him on his feet; that when he came in sight of the car, defendant started it forward, and that he jumped on one side of the car and another officer on the other; that the car moved some eight, ten or twelve feet before they succeeded in getting it stopped. Both officers, two or three others present at the time of the arrest, and the jailor, all say defendant was intoxicated, and some of them smelled intoxicating liquor or ''moonshine'' on him. The officer found in Maholick's pocket a pint bottle containing a small quantity of liquor. There can be no doubt that the defendant was intoxicated, if the State's witnesses are to be believed.

The main defense is that there is no evidence that defendant was actually driving the car while intoxicated. His testimony is that Maholick called him up from Wheeling and asked him to come to the railroad depot there. He went to Wheeling, got Maholick and brought him to Moundsville, where they started out to find a man Maholick wanted to see, first stopping at Mat Bryson's on Ninth Street; they then went to First Street, where Maholick knocked at the wrong door, and got into an argument with the man who was there; they then drove onto Second Street and back to First Street, stopping within a few feet of where they had stopped before, where they found Maholick's friend. They both went into the house and stayed there about fifteen minutes, and when they had re-entered the car and were talking about the man Maholick had the argument with, the police came up. He denies that the car was moving at the time he was arrested, or that it had moved after he came out of the house. He admits that he drove the car at all times during the evening. He says he had nothing to drink at the friend's house, and denies having

drunk anything at all that day. Maholick denies being intoxicated, or even drinking anything. He says the bottle found in his overcoat pocket was placed there by a man, whom he did not know, on the train that day, because the other man had no overcoat. He says the automobile was not moving when he and defendant were arrested, but that the engine was running. Two other witnesses, Mat Bryson and Pete Dorweth, at whose homes it is claimed the two men had been during the evening, testified that they were not drunk, and that neither was drinking.

We are of opinion that the jury were warranted in finding that defendant drove the car while intoxicated. If they believe that defendant was in such a state of intoxication as the State's witnesses testify he was, they were not bound, in giving him the benefit of the doubt, to find that he got in that condition after he stopped the car where he was arrested, even if they believed the car was not moving at the time the officers came up and arrested him. And the officers say he was driving, as if in an attempt to get away. The jury were fully instructed on reasonable doubt, presumption of innocence, and told that "a reasonable doubt is one that excludes every reasonable hypothesis except that of guilt."

State's instruction number two is complained of. This instruction is as follows: "The Court instructs the jury that you are the sole judges of the weight of testimony of any witness who has testified before you in this case, and that in ascertaining such weight, you have the right to take into consideration the credibility of such witness as disclosed from his evidence, his manner of testifying and demeanor upon the witness stand, and his apparent interest, if any, in the result of the case. And if you believe that any witness has testified falsely as to any material fact, you have the right to disregard all the testimony of such witness so testifying falsely, or to give to his testimony, or any part thereof, such weight only as the same in your opinion may be entitled to."

It is said that this instruction should have qualified the words "testified falsely", with some such word as *wilfully*, *knowingly, corruptly*, or *intentionally*. In the case of *State v. Staley*, 45 W. Va. 797, the words *knowingly* and *intention-*

*ally* were used. As given here, this instruction has been criticised in a number of our cases. *State* v. *Green,* 101 W. Va. 703; *State* v. *Lee,* 103 W. Va. 631; *State* v. *Symanski,* 104 W. Va. 231; and *State* v. *Mazourik,* 105 W. Va. 117. But no case has been reversed because of this technical error. The same instruction has been approved in *State* v. *Ringer,* 84 W. Va. 546; *State* v. *Long,* 88 W. Va. 685; *State* v. *Powers,* 91 W. Va. 737; and *State* v. *Zink,* 102 W. Va. 619. In *State* v. *Ringer,* the instruction was held bad because it did not contain the saving clause, "or give to his testimony, or any part thereof, such weight only as the same in your opinion may be entitled to." In *State* v. *Symanski, supra,* it is said: "The instruction is theoretically imperfect; but as conviction could not have depended on the belief of the jury that a witness had testified falsely as to *one* material fact, we see no prejudice to defendant in the instruction."

Error is assigned in the giving of State's instruction number four, that "a defendant in a criminal case has the right to testify in his own behalf, and if he does so, you can not arbitrarily reject his testimony, especially so where he is not contradicted either directly or indirectly by any other witness or by facts and circumstances in the case as made out by the evidence against him." We have held that this instruction by the State does not constitute reversible error. *State* v. *Koski,* 100 W. Va. 98; *State* v. *Symanski, supra.*

The court submitted to the jury fifteen several instructions offered by the defendant, but refused to give his instruction number sixteen as follows: "The court instructs the jury that if they find from the evidence that when the defendant was arrested his automobile was not in motion that there is no evidence upon which the jury can find the defendant guilty of the charge contained in the indictment, even though the jury may believe from the evidence that the defendant had drunk intoxicating liquors on the day in question." What we have said in regard to the sufficiency of the evidence to sustain the verdict of guilty, sufficiently answers the question raised by the refusal of the trial court to submit this instruction to the jury. The judgment will be affirmed.

*Affirmed.*