# CHARLESTON.

JOHN W. HALDREN, Administrator, etc., v. C. H. BERRYMAN et al.

(No. 6803)

Submitted September 17, 1930. Decided September 23, 1930.

404

*N. Clarence Smith, R. O. Crockett* and *Jno. R. Pendleton,* for plaintiff.

*Sanders, Crockett, Fox & Sanders,* for defendants.

LIVELY, PRESIDENT:

In this action, the administrator of the estate of Richard Rose, deceased, sues to recover damages on account of the death of Richard Rose, alleged to have been caused by the negligent driving of an automobile of defendant Bradley, an employee of defendant Berryman. The jury returned a verdict for defendants, and plaintiff appeals from the judgment entered on the verdict, charging that the lower court erred in admitting certain evidence, in refusing instructions offered on behalf of plaintiff, and in allowing improper instructions offered by defendants.

About seven o'clock in the evening of January 25, 1929, Richard Rose was found lying in the highway leading from Tazewell, Virginia, to Bluefield, West Virginia, at a point in Tazewell County, Virginia. One leg was crushed, an arm broken, and his chest bruised. He died the next afternoon. There were no eye-witnesses to the injury. Richard Rose, seventy years of age, had been seen about two hundred and fifty yards east of George Hurt's home (the point where he was found) by witness Wingo who testified that Rose was walking westward toward Tazewell in the same direction and on the same side of the road that he was driving and that Rose crossed the road in front of his car, thereby nearly causing Wingo to wreck his car in order to avoid hitting decedent. About the same hour Bradley and his companion Sheppard

were traveling east toward Bluefield in a truck belonging to the defendant Berryman, and were seen at the Claypool Filling Station, about 500 yards west of Hurt's home. George Hurt testified that while sitting in his home, he heard a crash, ran out on his porch, saw an automobile and two young men (dressed in coats which answered a description of those worn by Bradley and his companion) who came in front of the car for a moment, returned into the automobile, and, after some effort to adjust it from the ditch into the road, left. A few minutes thereafter he heard a second car stop and upon investigation learned of decedent's injury. Robert Craig recognized the Berryman truck, driven by Bradley towards Bluefield, when it passed the car in which Craig was driving in the direction of Hurt's home, about a mile from the point where the decedent was found. He stated further that he had passed no other car on the highway that evening. Likewise, witnesses stated that no cars had passed the station between the time the Berryman truck left the station until Rose was found, but witness Wingo stated that a Dodge touring car passed him just west of the filling station, going in the direction of Hurt's home. There was testimony, offered by plaintiff, to the effect that defendant's car was seen with but one headlight burning; that a headlight, introduced as evidence, was found in the highway; that two days after the alleged injury defendant's truck was examined, at which time it was found that one headlight had been put on recently, and that the bolt which held the headlight in the socket had been recently tightened, so that there was no rust on the bolt; also a number of short gray hairs, not introduced at the trial, were found on the edge of the fender, held there by mud, and that both the fender and the headlight showed signs of having hit something. At the point where decedent was found, there were marks indicating that a car had skidded for a distance of approximately 150 feet, first on the right hand side of the road going toward Bluefield, then across the road to the left side thereof, where the injured man was found. There is, however, no direct evidence that the marks were made by defendant's automobile or that Hurt heard the brakes go on before he heard the crash.

Bradley and his companion deny that the truck in which they were driving hit Rose or that they even saw him. Shortly after eight o'clock on the evening on which the alleged injury occurred, Bradley was seen driving a truck in Bluefield on which both headlights were burning. There is evidence adduced that the headlight and fender were damaged on the morning following the alleged injury by pushing another car; that the headlight introduced in evidence had not been on defendant's car several days before the injury; that there were four skid marks on the highway where decedent was found for a distance of fifty feet; that defendant's car had only two-wheel brakes, and that the tires on defendant's automobile were of uniform thinness.

All questions of conflicting evidence have been determined by the jury in favor of defendant, so that this court is concerned only with matters of law on which, plaintiff alleges, the lower court erred.

The first ground of error charged is that the lower court should have excluded testimony of the witness Wingo offered on behalf of defendants to establish decedent's contributory negligence. Counsel for defendants argue that the objection to the admission of this evidence has been waived by plaintiff's failure to make the evidence the subject of a special bill of exceptions or to set it out as a ground for setting aside the verdict. In a motion to set aside the verdict and for a new trial, counsel for plaintiff named as one ground the admission of improper evidence, but did not set out specifically the evidence to which he objected. The admission of this evidence is not the only evidence which the court admitted to which plaintiff objected. It has long been the rule in this state that "objections to evidence, unless made the subject of special bills of exception or specifically presented to the trial court as grounds of a motion to set aside the verdict and for a new trial, will not be considered on writ of error to this court." *Trippett* v. *Public Service Com.*, 100 W. Va. 321, 1st Pt. Syl. The reason for the rule is well stated by BRANNON, JUDGE: "But for it (the rule) a judge would have to retrace his steps and grope through the infinite matters in a long trial—his thought not

being called to review particular subjects, and often failing to review important ones." *Gregory, Admr.* v. *Railroad Co.*, 37 W. Va. 606, 610. If there has been error in the trial, the motion for a new trial is the time for review; and if there is no special bill of exceptions, the court is entitled to specific evidence to see if it has erred during the trial when, of necessity, somewhat hasty decisions are given on matters of procedure. For the reason above stated, we cannot now determine if the court erred in admitting the evidence in question.

The next assignment of error relates to the court's refusal to give plaintiff's instructions 2 and 4. Instruction No. 2 would have told the jury, in substance, that in the absence of evidence to the contrary, the law presumes a man to have exercised reasonable care for his own safety and that if defendants relied on contributory negligence as a defense, the burden was on defendants to show such contributory negligence by a preponderance of the evidence. Instruction No. 3, given by the court, covered the latter part of the instruction. The pertinent *quaere* is, did the court err in refusing to give the first part of the instruction? The rule of law relating to the presumption stated by plaintiff in the instruction is supported by numerous decisions both in this state and foreign jurisdictions where there is an issue as to the care exercised by the plaintiff. Instructions, however, must be based on the evidence; and to have given the requested instruction, the court would have led the jury to believe that there was no evidence on the question of contributory negligence. The law of Virginia, which controls the conduct of decedent, required pedestrians to keep "to the extreme left side" of the road. 1928 Supp. to the Code of Va. (1924) sec. 2145 (73). Witness Wingo saw decedent a few minutes before he was injured walking on the right side, and the undisputed evidence shows that decedent was found on the same side of the highway a very few minutes after Wingo had seen him. An instruction, the purpose of which is to exclude certain evidence, upon the theory that there was in fact no such evidence in the case, is properly refused, where in fact there was such evidence.

*Sands & Co.* v. *Norvell,* 126 Va. 384, 101 S. E. 569; *Bank* v. *Repair Co.,* 108 W. Va. 686.

Plaintiff's instruction No. 2, as offered, charged the jury that any person who drives an automobile on the highway at a speed or in a manner so as to endanger persons or property is guilty of reckless driving. The court did not err in refusing the instruction, because it is an abstract instruction and because there is no evidence in the record to sustain the charge.

The last assignment of error relates to instructions offered by defendant and allowed by the court. The objection to defendants' instruction No. 2 is not pressed by plaintiff's counsel, and it is suffice to say that we find no error therein. Instruction No. 4 is as follows:

> "The Court instructs the jury that if you believe from all the evidence in this case that there is such an absence of evidence as to the situation at the time Richard Rose was killed as to leave it a mere matter of speculation and surmise as to whether the death was caused by the negligence of Sherman Bradley, or solely by the contributory negligence of Richard Rose, then you should find for defendants."

It is the contention of plaintiff's counsel that the instruction told the jury that it could speculate from the absence of evidence as to the actual facts of deceased's conduct at the time of the accident on the question of contributory negligence. The language of the instruction is that used by the Virginia Court in *C. & O. Ry. Co.* v. *Nixon,* 125 S. E. 325, for the purpose of propounding a *quaere* and not for the purpose of stating a proposition of law. In the instant case, the jury had been instructed on the plaintiff's theory of negligence and defendants' theory of contributory negligence. The theory of the instruction in question would have told the jury that if there was such a lack of evidence that neither of the theories had been established, then there could be no recovery. It is admitted that the instruction is inaptly drawn, and we do not approve its language; but, instructions must be read together, and when considered in the light of other instructions, we are of the opinion that the instruction in question was not cal-

culated to mislead the jury, See *Karr* v. *Railroad Co.*, 76 W. Va. 527.

The jury having found for the defendants on abundant evidence to support that finding; and perceiving no error in the admission of evidence or prejudicial error in the instructions given and refused, the judgment will be affirmed.

*Affirmed.*