MYRTLE ALLOY, ADMRX.

*v.*

HENNIS FREIGHT LINES, INC.

(No. 10566)

Submitted January 26, 1954.    Decided March 16, 1954.

*Scherer, Bowers & File, L. L. Scherer, Douglas Bowers,* for plaintiff in error.

*Sayre, Lynch & Henderson, Ashworth & Ashworth, Robert J. Ashworth, G. Berk Lynch,* for defendant in error.

BROWNING, JUDGE:

This action of trespass on the case was originally instituted by Tony Alloy to recover for personal injuries

and property damage sustained in a collision between the automobile driven by Alloy and a tractor, owned by defendant B. W. Stuttes, and leased to and operated by defendant Hennis Freight Lines, Inc., hereinafter referred to as Hennis. Tony Alloy died pending trial from these injuries, and, upon motion of Myrtle Alloy, administratrix of the estate of Tony Alloy, the action was revived in her name as such administratrix, and an amended declaration was permitted to be filed. A trial by jury resulted in a verdict against the defendants Stuttes and Hennis in the amount of $11,062.63. It is stipulated by counsel that the verdict allotted $10,000.00 for the wrongful death of Tony Alloy, and $1,062.63 for damage to the automobile. A motion to set aside the verdict was made in behalf of each defendant, and, after consideration, the court sustained the motion as to Stuttes, but overruled the motion in behalf of Hennis, and entered judgment on the verdict.

Hennis, upon this writ of error assigns as error the refusal of the court to permit the introduction of proper evidence in its behalf, the giving and refusal of certain instructions, and the refusal of the court to direct a verdict in favor of the defendant.

Although the point is not discussed in briefs of counsel, the defendant objected to the action of the court in reviving the law action of Tony Alloy in the name of the plaintiff as administratrix of the estate of the deceased Tony Alloy, and likewise objected and excepted to the filing of the amended declaration. The designation of the items of the record to be printed does not include either the original or the amended declaration. The declaration should have been amended so as to conform to an action for wrongful death. The record shows only that defendant objected and excepted to the filing of the amended declaration, and is silent as to the grounds assigned therefor.

Chapter 55, Article 7 of the Code, as amended by Chapter 2, Acts of the Legislature, Regular Session, 1945, and Chapter 4, Acts of the Legislature, Regular Session, 1949,

provides that an action may be revived in the name of the injured party against the personal representative of the wrongdoer, and likewise revived in the name of the personal representative of the injured party against the wrongdoer or his personal representative. The section states: "Where an action is brought by a person injured for damage caused by the wrongful act, neglect or default of any person or corporation, and the person injured dies pending the action, the action shall not abate by reason of his death but, his death being suggested, it may be revived in the name of his personal representative, and the declaration and other pleadings shall be amended so as to conform to an action under sections five and six of this article, and the case proceeded with as if the action had been brought under said sections. * * *" Sections 5 and 6, to which reference is made, are concerned exclusively with actions for wrongful death by the personal representative of a deceased person, and Section 6 reads in part as follows: "* * * In every such action the jury may give such damages as they shall deem fair and just, not exceeding ten thousand dollars, * * *."

In *City of Wheeling ex rel. Carter, et al.* v. *American Casualty Co., et al.*, 131 W. Va. 584, 48 S. E. 2d. 404, this Court held that under the provisions of Code, 55-7-8, an action for damages for personal injuries instituted by the injured person, who, while the action is pending, dies from a cause or causes other than the injury, may be revived after his death by his personal representative, and prosecuted to final judgment against the wrongdoer. The injured person in this case, Tony Alloy, who initially instituted an action for damages, died while that case was pending from injuries received from the alleged wrongful act of the defendant. Upon those facts, his personal representative was empowered under the provisions of the statute to revive the action, but under the section heretofore quoted was required to proceed as if the action had been brought under Sections 5 and 6 of Article 7. Under those sections, the maximum sum that could be recovered for the wrongful death of the deceased was $10,000.00, and it was error for the court to permit testi-

mony as to the damage to the decedent's automobile, and to instruct the jury that they could return two separate verdicts, one, not to exceed $10,000.00 for the wrongful death, and the other for damage to the automobile of plaintiff's decedent. The total amount of the jury's verdict being in excess of the recovery permitted under the provisions of Sections 5 and 6 of Article 7, it should have been set aside upon motion.

At the trial, the plaintiff presented testimony showing that Morris, the driver of the tractor, was employed by the defendant for that purpose, that the tractor was being used in the defendant's business upon lease from another, and thereby established a presumption of agency which it was incumbent upon the defendant to rebut.

In *Hollen, Admx, Etc.* v. *Reynolds et al.*, 123 W. Va. 360, 15 S. E. 2d. 163, this Court said, in quoting from *Jenkins* v. *Spitler*, 120 W. Va. 514, 199 S. E. 368: "There is a rebuttable presumption that the driver of another's car is acting about the owner's business. However, if creditable evidence to the contrary is offered, the presumption loses its legal force and only the facts which gave rise to it remain to be considered by the jury, along with the other evidence."

The plaintiff offered no other evidence of agency at the time of the collision, and the defendant, in an effort to rebut the presumption, proved the following: That the defendant's driver, Morris, while hauling a load of veneer from Greensburg, Illinois to Winston-Salem, North Carolina, had a slight accident involving the trailer of his tractor-trailer combination while passing through Beckley, West Virginia; that he left the tractor and trailer at the Raleigh Motor Sales, slightly south of Beckley, at about 12:00 o'clock noon; that Morris returned to the business section of Beckley, and a short time thereafter met one Woodrow Johnson at Tom's Grill on Prince Street; that Morris and Johnson, upon leaving Tom's Grill, went to Rahalls, identified like Tom's Grill as a restaurant and place where beer was sold and consumed; that, thereafter, these two men went to the Oasis,

Rameihs' and the Silver Bell, identified also as places similar to the others; that at the bus terminal building Morris and Johnson secured a taxicab which transported them to the O. K. Tavern, identified by the evidence as being on Harper Road, at which place Johnson says Morris drank "a beer" and tried to borrow some money; that upon leaving the O. K. Tavern, they proceeded by taxicab to the Raleigh Motor Sales where Morris had a check cashed; that upon securing a sum of money there, he paid the taxicab driver, unhooked the tractor from the trailer, and the two men returned to Beckley in the tractor; that the men next went to a place on South Kanawha Street, the name of which the witness did not recall, and there "drank beer"; that, still traveling in the tractor, they went to an establishment known as the Blue Star, described as "a restaurant and beer joint"; that from the Blue Star they returned to Beckley and visited the Prince Lunch, and, according to the testimony of Johnson referring to Morris, "he, I think, drank some beer"; that from that place they went to Tom's Grill, and after remaining there a few minutes, proceeded to a place known as the Silver Slipper on the road between Beckley and Mount Hope; and that while traveling from the Silver Slipper to another place known as the O. K. Tavern on the Harper Road, the tractor in which they were still traveling collided with the automobile of plaintiff's decedent causing the injuries which later resulted in his death. The driver Morris and the witness Johnson were together and engaged, as heretofore described, for approximately five hours prior to the collision with the Alloy automobile.

The defendant contends that the court committed error in not permitting the witness Johnson to answer certain questions propounded to him upon direct examination. This question was asked: "Now, what were you and Mr. Morris going to these different places of business for?" The court sustained an objection interposed by the plaintiff and stated that the witness could tell what he did at those places, whereupon the witness was asked by counsel for the defendant what he and Morris did, and he an-

swered: "We went to these places looking for a party, and he drank a beer at a few of these places which I have mentioned." Q. "You say 'looking for a party'." A. "Yes sir." Q. "What do you mean by that?" The court sustained an objection to the last question and made this statement: "Well, I think it is plain what he was doing. He was looking for a man, I suppose." Counsel for the defendant thereupon stated: "Well, Your Honor, that is why it isn't quite so plain, because in this case it isn't that way." An avowal upon the record shows that if the witness had been permitted to answer he would have stated that he and Morris were looking for a girl that Morris wanted to see.

The defendant also complains of the ruling of the court in not permitting the witness Groves to answer certain questions asked him relative to the authority which the driver Morris had in operating the tractor. In *Ritz* v. *Kingdon,* 139 W. Va. 189, 79 S. E. 2d 123, decided December 18, 1953, this Court held that: "Alleged errors in the admission or the rejection of evidence, to which objection has been made in a trial court, are waived unless such evidence is specifically set forth as a ground of a motion to set aside the verdict and grant a new trial or unless it is incorporated in a special bill of exceptions which shows the evidence and the ruling of the court in admitting or rejecting it." Inasmuch as the defendant did not, in his motion to set aside the verdict, specifically assign as error the rulings of the court upon the admission of the particular evidence which was rejected, and since such alleged errors are not incorporated in special bills of exceptions which show the evidence and the ruling of the court, the alleged errors in the rejection of this evidence must be taken as waived.

In *Fiocco* v. *Carver,* 137 N. E. 309, a New York case, the court, in discussing the inference or presumption of agency arising out of the operation by an employee of his employer's vehicle said: "We draw the inference of regularity, in default of evidence rebutting it, presuming, until otherwise advised, that the servant will discharge his duty. We refuse to rest upon the presumption, and put

the plaintiff to his proof, when the departure from regularity is so obvious that charity can no longer infer an adherence to the course of duty." This Court agrees with and subscribes to the rule enunciated in that case.

Upon the evidence introduced in behalf of the defendant, and heretofore related in some detail, this Court holds that the presumption of agency, initially established by the plaintiff, was overcome as a matter of law by the testimony introduced in behalf of the defendant showing the course of conduct of the driver for a period of approximately five hours prior to the collision, and the plaintiff thereafter having failed to rebut the defendant's testimony by evidence of agency, it was reversible error for the trial court not to grant the defendant's motion for a directed verdict.

For the reasons herein stated, the action of the court in setting aside the verdict as to B. W. Stuttes, which ruling is here upon cross-assignment of error by the plaintiff, is affirmed.

The judgment of the Circuit Court of Raleigh County is reversed, the verdict of the jury set aside, and the case is remanded for a new trial.

> *Affirmed in part;*
> *reversed in part;*
> *verdict set aside;*
> *new trial awarded.*