STATE OF WEST VIRGINIA

*v.*

DEWAYNE F. DAVIS

(No. 10637)

Submitted January 20, 1954. Decided March 30, 1954.

*M. E. Boiarsky, Wm. L. Lonesome,* for plaintiff in error.

*John G. Fox,* Attorney General, *James C. Blanton,* Special Assistant Attorney General for defendant in error.

GIVEN, PRESIDENT:

DeWayne F. Davis, a physician and surgeon, was indicted by a grand jury of the Intermediate Court of Kanawha County. The indictment charged that the defendant, "did feloniously counsel, hire, procure, aid and abet" two women whose names were unknown to the grand jury, in the commission of a criminal abortion upon the body of a girl of the age of sixteen years.

The jury returned a verdict finding him guilty as charged in the indictment. After overruling a motion to set aside the verdict and a motion in arrest of judgment, the Intermediate Court of Kanawha County sentenced him to confinement in the penitentiary for an indeterminate term of not less than three nor more than ten years, and he, having been denied a writ of error by the Circuit Court of Kanawha County, prosecutes a writ of error to this Court.

The girl upon whose body the abortion was committed, will be hereinafter referred to as the prosecutrix. The prosecutrix and her sister, a married woman, consulted a physician and surgeon to determine whether the prosecutrix was pregnant. That physician, after two consultations and examinations of the prosecutrix, diagnosed pregnancy, at least tentatively.

According to testimony adduced by the state, the prosecutrix and her sister thereafter consulted the defendant.

In the month of October, 1951, the defendant was informed that the prosecutrix was pregnant and he was asked if he could give the prosecutrix any treatment for the purpose of terminating the pregnancy. At first the defendant replied in the negative. He was then asked if he knew any person who could "do something." He again replied in the negative. The defendant then administered to the prosecutrix some five "shots", or injections. The drug or combination of drugs used in such treatment is not disclosed by the record. For this treatment, the defendant was paid some amount in excess of $50.00.

After such treatment by injections, the pregnancy not having been terminated, the defendant was requested to direct the prosecutrix and her sister to some person who would perform an abortion. The defendant informed the prosecutrix and her sister that he would not perform the operation. But he told the prosecutrix and her sister that he would get in touch with someone and would let them know, and at the same time, he told them that it would cost approximately $125.00.

The defendant instructed the two women to go to a place on or near the corner of Washington and Court Streets in the City of Charleston at the approximate hour of 7 o'clock, P. M., sometime during the month of October, 1951. He further instructed them that the husband of the sister was to get out of the automobile, put his foot on the front bumper and have the lights of the automobile burning. The two women and the husband of the sister went to the appointed place, but the husband did not put his foot on the front bumper of the automobile. Thereupon, the sister of the prosecutrix informed her husband of the telephone number of the defendant. The husband called the telephone number given him and was directed by some person in a telephone conversation that he was to come back the next night, leave the lights on and get out of the automobile and stand with his foot on the front bumper of the automobile. Those instructions were obeyed. On this being done, two women drove by them in an

automobile and accosted the prosecutrix, her sister and her brother-in-law. The prosecutrix having left the automobile in which her sister and brother-in-law were sitting, entered the automobile with the unknown women. She was taken to a place in or near South Charleston. On her way, however, a young boy entered the automobile who addressed one of the women by a name which sounded like "Winfree". When the prosecutrix and the two women reached the apartment in or near South Charleston, and after entering such apartment, the prosecutrix was given an external and internal alcohol bath. She was then placed on an ironing board, and a long slender instrument with a hook on the end of it was inserted into her uterus and vaginal tract, causing her considerable pain. Immediately thereafter, the prosecutrix's vagina was packed with gauze. After an absence of about an hour and forty-five minutes, she returned to the car in which her sister and brother-in-law were waiting for her at the corner of Washington and Court Streets in the City of Charleston.

In the meantime, the two women had been paid the sum of $100.00 in cash. After her return to her sister and brother-in-law, she was taken to the home of her sister in Dunbar where she remained for three days, still carrying the gauze packing. At the expiration of that time, the gauze was partially expelled and the prosecutrix removed all of the remaining gauze from her vagina. Upon the removal of the gauze packing, the prosecutrix passed some blood of which there were some clots. Among these clots was a human foetus. She slowly recovered and her reproductive organs resumed their normal functions sometime in December, following. There is evidence that the actual abortion took place on the 26th day of October, 1951.

The foregoing are the facts as established by the evidence adduced by the state.

The defendant denied that he had ever seen either the prosecutrix or her sister. He denied that he had given the prosecutrix any injection of medicine, drugs or a combi-

nation of drugs. The remainder of the defense is in the nature of an alibi.

The defendant is a physician connected with West Virginia State College. He testified that he is the senior physician at that institution. He shows by oral testimony and documentary proof that he left the City of Charleston on a Chesapeake and Ohio Railroad train at 10:45 P. M., October 18th, enroute to Washington, D. C. He stayed in the City of Washington at the Statler Hotel from the morning of the 19th of October, 1951, until he left the City of Washington at approximately 6 o'clock P. M., October 21, 1951, on a train operated by the Chesapeake and Ohio Railroad, enroute to Charleston. He arrived in Charleston, West Virginia, at approximately 3:25 on the morning of October 22, 1951.

The defendant testified that he was arrested about 4:30 P. M. January 19, 1953, by two members of the Department of Public Safety; that he went to the barracks of the State Police in South Charleston and was then taken to the Kanawha County jail where identification was made. He was then asked by an investigator of the prosecuting attorney's office if he would go to his own office. The defendant testified that he went to his own office without objection and that two members of the Department of Public Safety and the investigator looked over his office but did not make a detailed search. After that he was taken to the office of the Clerk of the Intermediate Court where he gave bond for his appearance.

The testimony of other physicians was adduced by the defendant who testified concerning the effects of certain drugs, prostigmine, ergotrate and pituitrin. In general, the testimony of these physicians was to the effect that such drugs would not cause an abortion.

Many errors are assigned by the defendant as a basis of reversal, many of which are without merit. The errors assigned and argued in the briefs are: The trial court erred in refusing to require the state to file a bill of particulars; in overruling a demurrer to an indictment and a

motion to quash same; in refusing to direct a verdict for the defendant after the taking of the testimony was ended; in refusing to set aside the verdict; in refusing to give defendant's instructions numbered 9 and 10 as offered and in giving such instructions numbered 9 and 10 as amended; in overruling a motion for a mistrial because of remarks of the assistant prosecuting attorney; in admitting improper evidence offered by the state and in refusing proper evidence offered by the defendant.

The assignment of error based on the overruling of the motion to require the state to file a bill of particulars is argued at some length in the brief. The defendant contends that the state knew from the evidence of the prosecutrix, that one of the unknown women was addressed by a name that sounded like "Winfree", and that such information should have been given the defendant by a bill of particulars. This testimony relative to the name by which one of the women was addressed, was elicited by defendant's counsel on cross-examination of the prosecutrix. There is nothing in the record disclosing that the state was in possession of that information. The allowance of a bill of particulars rests within the sound but reviewable discretion of a trial court and unless the defendant has been prejudiced, a refusal of the bill of particulars does not call for reversal. *State* v. *Counts,* 90 W. Va. 338, 110 S. E. 812; *State* v. *Joseph,* 100 W. Va. 213, 130 S. E. 451; *State* v. *Hudson,* 128 W. Va. 655, 37 S. E. 2d 553. See *Wong Tai* v. *United States,* 273 U. S. 77, 47 S. Ct. 300, 71 L. Ed. 545.

The law, with reference to bills of particulars, applies alike to criminal and civil cases. *State* v. *Lewis,* 69 W. Va. 472, 72 S. E. 475. In some instances, it is error to refuse a bill of particulars, as in the case of *State* v. *Railroad Company,* 68 W. Va. 193, 69 S. E. 703, but the record in the instant case is nowise similar to the case of *State* v. *Railroad Company, supra.* See *State* v. *The Greater Huntington Theatre Corporation,* 133 W. Va. 252, 55 S. E. 2d 681.

The indictment in this case, subject to the criticism hereinafter named, informed the defendant fully and com-

pletely that he was charged with the crime of being an accessory before the fact to the commission of the crime of criminal abortion. *Sawyer* v. *United States* (8 C.C.A.) 89 F. 2d 137. Moreover, the state, by the prosecuting attorney, informed the defendant's counsel at the outset of the trial that it had no knowledge of the identity of the women who allegedly committed the abortion. See *Commonwealth* v. *Hebert*, (Mass.) 163 N. E. 189.

We are of opinion that the indictment is sufficient and meets the statutory and constitutional requirements. See Code, 62-9-5 and *Scott* v. *Harshbarger*, 116 W. Va. 300, 180 S. E. 187. In *Scott* v. *Harshbarger, supra,* the statutory form was held insufficient. The Criminal Trial in the Virginias, Lee, §1575.

. We bear in mind that the indictment on which this trial was had was an indictment against the defendant herein for being an accessory before the fact to criminal abortion. It is to be noted that there is a clear distinction between the crime of accessory before the fact and the crime of aiding and abetting. An accessory before the fact must be absent at the time and place of the principal offense. *State* v. *Ellison*, 49 W. Va. 70, 73, 38 S. E. 574; *State* v. *Roberts*, 50 W. Va. 422, 426, 40 S. E. 484. An aider or abettor is one who is present at the time and place of the commission of the crime. *Foster* v. *Commonwealth*, (Va.) 18 S. E. 2d 314. See The Criminal Trial in the Virginias, §788 and §803. 1 Brill Cyclopedia Criminal Law, §240 and §241; 14 Am. Jur. Criminal Law, §95 and §96. It was therefore inept to charge the defendant in this case with aiding and abetting. But the words, "aid and abet" may be rejected as immaterial surplusage, and it was not reversible error to try the defendant on such indictment. *State* v. *Boggs,* 103 W. Va. 641, 138 S. E. 321.

The defendant contends that there is a fatal variance between the allegations in the indictment and the proof. He supports this contention by citing some cases in other jurisdictions in which the grand jury knew or should have known the names of the principals. *Williams* v. *State,* Tex.

Crim. App. 153 S. W. 1136; *Manley* v. *State,* Tex Crim. App. 136 S. W. 2d 613; *Morgenstern* v. *Commonwealth,* 27 Gratt. 1018.

An examination of those authorities discloses that the names of the principals who should have been named in the indictment were known to the grand jury, or could have been easily ascertained by the exercise of reasonable diligence. No such situation is shown in the instant case. The only time the name of either of the principals who committed the actual abortion upon the prosecutrix appears is in the vague and uncertain testimony of the prosecutrix who indicated that one of the women might have been known as "Winfree". There is no evidence that the grand jury knew that fact or could have ascertained it.

The rule in this jurisdiction is set forth in the cases of *State* v. *Bruce Stone* and *State* v. *Willis Stone,* 109 W. Va. 721, 156 S. E. 80, as follows: "An indictment charging one with aiding and abetting the ownership, operation, and maintenance of a moonshine still, should state the name of the principal, if known; and if unknown, this should be alleged." We therefore are of the opinion that there is no variance between the allegation and the proof. See *People* v. *Smith* (Ill.) 87 N. E. 885.

As stated above, the defendant asserts that it was error to overrule the motions for a directed verdict, and to set aside the verdict and award defendant a new trial. We shall discuss that assignment later.

Defendant assigns as error the action of the court in permitting counsel for the state to ask improper questions and in permitting such questions to be answered. The basis for such assignment, as argued in the brief, is that the leading questions were propounded by counsel for the state. The evidence objected to is not set forth in a special bill of exceptions, nor does the record show that it was specifically assigned as ground for a motion to set aside the verdict and grant a new trial. *State* v. *McNemar,* 108 W. Va. 237, 151 S. E. 176; *Haldren* v. *Berryman,* 109 W. Va.

403, 155 S. E. 125; *State* v. *May*, 111 W. Va. 118, 160 S. E. 918; *Alloy* v. *Hennis Freight Lines*, decided March 15, 1954, 139 W. Va. 480, 80 S. E. 2d 514. See *Ritz* v. *Kingdon*, 139 W. Va. 189, 79 S. E. 2d 123, 137, where numerous cases are cited in support of this principle. Though the case of *Ritz* v. *Kingdon, supra*, was a suit in equity on an issue of *devisavit vel non*, the same rule with respect to admission or rejection of evidence and bills of exceptions applies to the *Ritz* case as if it were a law action. The allowance of leading questions rests in the discretion of the trial court. *Portner* v. *Portner's Ex'rs*. (Va.) 112 S. E. 762. In accordance with the cases cited above, we hold that the objections were waived and will not be considered on this writ of error. *State* v. *May, supra.*

Coming now to the error grounded on the remarks of the assistant prosecuting attorney in his argument to the jury. During the closing argument, the assistant prosecuting attorney referred to the defendant "as being in the business of committing abortions and as treating Gloria Keeton, a witness offered on behalf of the State, to procure an abortion." After the argument of the assistant prosecuting attorney had been completed, counsel for the defendant objected to such statement. The objection was overruled and counsel for the defendant then moved the court to declare a mistrial, which was likewise overruled.

Undue restriction should not be placed on a prosecuting attorney in his argument to the jury. Moreover, we fail to see any manifest injustice to the defendant by such argument. There is some evidence in the record which tends to show that Mrs. Metz, the sister of the prosecutrix, knew of the defendant's business. She likewise testified that he gave the prosecutrix some kind of drugs. *State* v. *Lewis*, 133 W. Va. 584, 57 S. E. 2d 513. Certainly the trial court had the discretion to restrain the prosecutor from an improper argument, but we fail to see where the rights of the defendant were prejudiced by such argument. *State* v. *Allen*, 45 W. Va. 65, 30 S. E. 209. See *State* v. *Simon*, 132 W. Va. 322, 52 S. E. 2d 725; *State* v. *Reppert*, 132 W. Va. 675,

52 S. E. 2d 820. There is another reason tending to obviate any basis for error in the trial court's ruling with reference to the assistant prosecuting attorney's argument. The objection was not made at the time such remarks were made but was made at the close of the argument. See *State* v. *Harlow,* 137 W. Va. 251, 71 S. E. 2d 330; *State* v. *Files,* 125 W. Va. 243, 249, 24 S. E. 2d 233; *State* v. *Bragg,* 105 W. Va. 36, 141 S. E. 400.

An assignment based on the modification of state's instruction number 9, as offered, reads as follows: "The Court instructs the jury that the testimony of an accomplice in crime, that is, a person who actually commits or participates in a crime, is admissible in evidence, yet the evidence of an accomplice in crime, when not corroborated by some person or persons *not implicated* in the crime, as to matters material to the issue, that is, matters connecting the defendant with the commission of the crime as charged against him, ought to be received with great caution by the jury before they should convict on such testimony." [emphasis supplied]. The modification of instruction number 9 was made by inserting the words *not an accomplice* instead of the words *not implicated.* We can see no error in the modification of instruction number 9.

The assignment of error, with reference to the modification of state's instruction number 10, is of similar import. The pertinent part of that instruction reads as follows: "* * * feloniously, wilfully, and unlawfully employed and used upon the womb of the said [prosecutrix] a certain instrument with the intent to procure a miscarriage * * *". That part of instruction number 10 was modified by the court as follows: "* * * feloniously, wilfully, and unlawfully employed and used upon the womb of the said [prosecutrix], a certain instrument *or other means* with the intent to procure a miscarriage * * *" [emphasis supplied]. The modification was made by the insertion by the court of the words *or other means.* We can see no error in the modification of instruction number 10. The

record supports the instruction, since it is testified to by the prosecutrix that the principals packed gauze in her vagina, in addition to using a sharp instrument. The objections to the modification of the two instructions seem to be frivolous.

The crucial question in this case turns on the sufficiency of evidence to sustain the verdict of guilty. We bear in mind that the defendant here is charged with procuring the services of two unknown women who actually, according to the state's testimony, performed the abortion. The defendant is not connected with the principal crime, by the testimony of the prosecutrix and her sister. The evidence of these two witnesses is vague. The prosecutrix and her sister could not name the principal offenders, or the place where the abortion was committed. The testimony of these two witnesses as to the color of the car in which the two unnamed principals were riding is divergent, as well as the words used by the two unnamed principals in addressing the prosecutrix when they picked her up to take her to the place of the crime. In addition, the testimony of the two state's witnesses is materially weakened by the evidence supporting the alibi of defendant. If the prosecutrix and her sister are correct as to the dates and times in which the prosecutrix was given injections, the defendant could not have been in the City of Charleston. It is shown by strong evidence, supported by documentary proof, that the defendant was actually in the City of Washington at the time some of these alleged injections were administered to the prosecutrix. Bearing this in mind, we do not think that the evidence adduced by the state established the guilt of the defendant beyond a reasonable doubt. The evidence of the state does not rise to that grade of proof required in criminal cases for a conviction.

When the state rested its case, the evidence was insufficient to support a verdict of guilty. The trial court should have sustained the motion and directed a verdict of not guilty. In overruling the motion for a directed verdict, the trial court committed reversible error. *State* v. *Tabet,* 136 W. Va. 239, 67 S. E. 2d 326; *State* v. *Hudson, supra;*

*State* v. *Zeigler,* 40 W. Va. 593, 21 S. E. 763. See *State* v. *Aliff,* 122 W. Va. 16, 7 S. E. 2d 27; *State* v. *White,* 66 W. Va. 45, 66 S. E. 20; *State* v. *Friend,* 100 W. Va. 180, 130 S. E. 102; *State* v. *Chafin,* 78 W. Va. 140, 88 S. E. 657.

The province of the jury is not invaded when this court sets aside a verdict not supported by the evidence. *State* v. *White, supra.* The motion to set aside the verdict should have been sustained and the defendant granted a new trial, for the reason that the evidence was insufficient to support the verdict.

For the reasons that the trial court overruled a motion to direct a verdict of not guilty, and overruled a motion to set aside the verdict and grant the defendant a new trial, we reverse the judgments of the Intermediate and Circuit Courts of Kanawha County, set aside the verdict and grant the defendant a new trial.

This case is remanded to the Intermediate Court of Kanawha County for the purpose of such trial.

> *Reversed, verdict set aside,*
> *new trial awarded and remanded.*

LOVINS, JUDGE, dissenting:

I dissent from the conclusions on which the reversal of this case is based. I think that the evidence is sufficient to sustain the verdict.

True, the evidence is conflicting and in some aspects, the state's evidence may be unsatisfactory. Nevertheless, the evidence adduced by the state is not incredible. The jury saw and heard the witnesses. "A verdict based on conflicting evidence, and upon inferences proper to be drawn from all the facts and circumstances, will not be disturbed by this court, unless there is such a preponderance against the verdict as will warrant the conclusion that it was rendered as the result of passion, prejudice or some ulterior motive on the part of the jury." *State* v. *Padgett,* 93 W. Va. 623, 117 S. E. 493; *State* v. *Barker,* 92

W. Va. 583, 115 S. E. 421. See *State* v. *Meadows,* 124 W. Va. 412, 414, 20 S. E. 2d 687; *State* v. *Kincaid,* 104 W. Va. 396, 397, 140 S. E. 338.

"Where the testimony on an issue of fact in a criminal case is conflicting, it is for the jury to determine the weight to be attached to the reasonable inferences that can be drawn from all the facts and circumstances in evidence, and their verdict will not be set aside by the appellate court unless plainly wrong." *State* v. *Magdich,* 105 W. Va. 585, 143 S. E. 348. Point 1 of the syllabus of *State* v. *McLaughlin,* 91 W. Va. 654, 114 S. E. 278, is to the same effect.

In the opinion in the case of *State* v. *Toler,* 129 W. Va. 575, 582, 41 S. E. 2d 850, the following language appears: "It is peculiarly within the province of the jury to weigh the evidence in criminal cases, and every element thereof, including that of self-defense. The verdict of the jury in a criminal case will not be set aside unless it is manifestly against the weight of the evidence, and it will not be set aside merely because there are conflicts in the evidence. A multitude of cases which sustain these propositions could be cited, but the following will suffice: *State* v. *McMillion, supra* [104 W. Va. 1, 138 S. E. 732]; *State* v. *Magdich,* 105 W. Va. 585, 143 S. E. 348; *State* v. *Hamrick,* 112 W. Va. 157, 163 S. E. 868; *State* v. *Bowles, supra* [117 W. Va. 217, 185 S. E. 205]; *State* v. *DeBoard, supra* [119 W. Va. 396, 194 S. E. 349]; State v. Gunter, supra [123 W. Va. 569, 17 S. E. 2d 46]".

In cases where there is substantial conflict in the testimony, the credibility of the witnesses is for determination of the jury. I think the Court, in this instance, has gone counter to a number of cases decided in this jurisdiction, some of which are cited herein, and thus has invaded the province of the jury. The Court, by setting aside the jury verdict in the instant case, is passing on the credibility of the witnesses' testimony who testified on behalf of the state.

For the above reason, I would affirm the judgments of

the Intermediate and Circuit Courts of Kanawha County.

I am authorized to say that Judge Browning joins in this dissent.